JAMES W. HUDSON, Respondent, *vs.* ST. LOUIS, KANSAS CITY AND NORTHERN RAILWAY Co., Appellant.

1. *Justices' courts—Cattle, damages to, by railroads—Jurisdiction.*—Justices of the peace have jurisdiction over suits against railroads for killing, maiming, &c. cattle, &c. in their respective townships, without regard to the value of the animals, or the amount of damages claimed. (W. S., 808, ? 3.)

2. *Railroads—Suits against, how brought—Injuries to individuals—Statutes, construction of.*—The statute concerning suits against railroads, providing that the penalties therein mentioned shall be sued for in the name of the State (W. S. 309, ? 36; 310, 311, ?? 38, 42, 43,) so far as the rights of individuals to recover for damages received are concerned, is a remedial and not a penal statute, and, at most, only can be construed to give an additional method of prosecuting such suits.

3. *Practice, civil—Trials—Jurors, competency of—Challenge.*—Jurors were asked, "whether, if the evidence were evenly balanced between plaintiff, an individual, and defendant, a corporation, which way would you incline to find?" They answered, that they would incline to find for the plaintiff. They were then challenged for cause. The court then asked them, if they thought they could try the case fairly, and without prejudice or bias; to which they replied affirmatively. *Held*, that, taking both answers together, the jurors were not incompetent, that jurors are not to be expected to know the rules of law about the weight of evidence, until instructed thereupon by the court.

4. *Railroads—Summons—Service on depot-agent.*—A summons against a railroad is properly served on its depot-agent by the constable.

5. *Practice, civil—Trials—Instructions—Questions of law.*—Instructions submitting questions of law to the jury ought not to be given, unless other instructions are also given explaining those questions.

6. *Practice, civil—Trials—Corporations, suits against—Existence of, proof of—Justices' courts.*—It is not necessary, on a trial in the Circuit Court of a cause originally brought before a justice against a corporation, for the plaintiff to prove defendant's corporate existence, when defendant has appeared and defended as a corporation, has executed bonds filed in the cause authenticated by its corporate seal, and in every way, that it could be done, recognized its corporate existence, and tried and defended the case on the merits to final judgment in its corporate name.

*Appeal from Warren Circuit Court.*

*John M. Woodson,* for Appellant.

I. The double damage liability imposed by section 43, is a penalty recoverable only in the name of the State of Missouri. (W. S., 310, §§ 42, 43.)

The peculiar language of this section must be observed. It provides, after declaring that railroad corporations shall erect and maintain fences, &c., that, "Until such fences, open-

ings and gates or bars, farm crossings or cattle guards, shall be duly made and maintained, such corporations. shall be liable in double the amount for all damages which shall be done, &c., occasioned in either case by a failure to construct or maintain such fences or cattle guards."

It is nowhere provided, that such double amount shall be; recoverable by the owner of any animal killed or injured, &c. but by taking sections 42 and 43, and construing them together, it will be seen, if such double liability is a penalty, that it was unnecessary to provide a means for the recovery thereof in such section 43, as such remedy or means is provided in section 42. Again, a full and complete remedy is given to the owner of any animal killed or injured, &c., in W. S:, 520, § 5.

Construing the two statutes as consistent statutes, and each defining, as respondent claims, a right of recovery in the owner, we conclude ; that section 5 defines the owner's right of recovery to the extent of the value of his property ; and section 43, being a general police regulation, enacted for the protection of the public, defines the rights of the public, the people, the State of Missouri.

This Statute, (W. S., Chap. 37,) would be unconstitutional, were it not that a penalty is imposed for a failure to fence, which the legislature may dispose of in its discretion. (Trice vs. Han. & St. J. R. R., 49 Mo., 438.) Being a penal statute, all of its provisions should be strictly construed, and if a means of enforcement is provided by any section of such statute, it should be pursued, and no remedy not specifically provided should be implied.

Section 42, (W. S., 310,) says, that the penalties may be sued for in the name of the State. This word so used, in regard to bringing the suit in the name of the State and before a justice of the peace, ought to be considered as imperative, and as used in the sense of the word "shall." (State vs. Hannibal & St. Joseph R. R. Co, 51 Mo., 532.) To conclude this point, the provisions of section 43 are designed to punish the company for a neglect of duty, viz: A

failure to fence, and a suit to recover the penalty, shall be brought in the name of the State. (Smith vs. Lockwood, 13 Barb., 209 ; McKeon vs. Caherty, 3 Wend., 494; Simmons vs. Borland, 10 Johns., 467; Allen vs. Ehle, 7 Cow., 496 ; Stafford vs. Ingersol, 3 Hill, 38 ; Rennick vs. Morris, 7 Hill, 575 ; Cecil vs. Pac. R. R., 47 Mo., 246 ; Riddick vs. Governor, 1 Mo., 147 ; W. S., 310, §§ 42, 43 ; Millar vs. Taylor, 4 Burr., 2305 ; Donaldson vs. Beckett, 7 Bro. P. C., 88 ; Dudley vs. Mayhew, 3 N. Y., 9 ; Lindell's Admr. vs. Han. & St. Jo. R. R. Co., 36 Mo., 543 ; Harris vs. Han. & St. Jo. R. R. Co., 37 Mo., 307 ; Moffatt vs. Conklin, 35 Mo., 453 ; Leary vs. Han. & St. Jo. R. R. Co., 38 Mo., 485.)

II. The justice of the peace had no jurisdiction, the penalty sought to be recovered, exceeding one hundred dollars. (W. S., 807, § 2.)

It may be said, that by the fifth sub-division of section 3 of same chapter, page 808, which gives justices of the peace concurrent jurisdiction with the Circuit Courts, this case is covered.

The fifth sub-division only covers such cases as may arise under the 5th section of chapter 43, (W. S., 520,) which gives the owner the right of recovery, and does not confer jurisdiction for the recovery of the penalty for a failure to fence, under section 43, as before stated.

III. The court allowed incompetent and partial jurymen to try said cause after challenge for cause. These jurors were asked, " If the evidence in this case should be evenly balanced between plaintiff, an individual, and defendant, a corporation, which way would you incline to find ?" They severally replied, " I would incline to find for the plaintiff." (Chicago & Alton R. R. Co. vs. Adler, 56 Ill., 344.)

IV. The language of the instruction, given by the court on its own motion, "that the hogs got upon the track by reason of defective fencing," without stating at a point where the appellant was required to fence, is error. (Cecil vs. Pacific R. R. Co., 47 Mo., 246.)

V. The giving of double damages by the court, after a gen-

eral verdict for $50 by the jury, was error. There is nothing in section 43 of the Railroad Corporation law of this State, fixing, or in any manner regulating, the practice in regard to doubling a verdict of a jury. We hold that the only rule that could be applied, would be to instruct the jury to find such double amount as their verdict, or find single damages specially, and then the court to double; and that, on a general finding, the presumption must follow that such judgment was for all damages given by the statute. (Walther vs. Warner, 26 Mo., 143; Cross vs. United States, 1 Gallison, 26.)

VI. There was no proof of the corporate existence of the defendant.

*E. A. Lewis*, for Respondent.

I. Service of process on defendant was properly made, and no erroneous decision of the justice could be regarded in the Circuit Court. (W. S., 849, § 13; 810, § 9; Ser vs. Bobst, 8 Mo., 506; Harper vs. Baker, 9 Mo., 116.)

II. There was no error in the qualifying of the three jurors objected to; the court tested their fitness by a proper inquiry to which their answer was conducive. Their response to the question by defendant's attorney evinced rather an ignorance of the law, than a disqualifying bias.

III. The court committed no error in doubling the damages. (Norton vs. Han. & St. Jo. R. R., 48 Mo:, 387; Cross vs. United States, 1 Gallison, 26; Withington vs. Hilderbrand, 1 Mo:, 280; Brewster vs. Link, 28 Mo., 147.)

Vories, Judge, delivered the opinion of the court.

This action was brought before a justice of the peace to recover damages for the killing of stock belonging to the plaintiff, by the locomotive and cars of the defendant,

The statement, filed as a cause of action before the justice, charged, that the defendant was a corporation duly organized under the laws of this State, and was at the time of the wrongs complained of, on the 8th day of July, 1872, the owner and occupier of a railroad running through Hickory Grove Township, in Warren county, Missouri; also was the owner

and occupier of a certain locomotive and train of cars running on said railroad; that at said time plaintiff was the owner and in possession of twelve blooded hogs of the value of seventy-two dollars, which said hogs casually, and without the fault of plaintiff, strayed upon the track of said railroad at a point in said township about three miles west of the town of Wright City in said township, where said railroad runs through cultivated fields of land, and where said road was not inclosed by a lawful fence, and not at either a public or private crossing of said road; that defendant negligently, by and with said locomotive and train of cars running as aforesaid, on said road by defendant's agents and servants, ran over and killed eight of said hogs of plaintiff, and crippled the remaining four thereof, being so as aforesaid strayed upon said railroad, to the damage of the plaintiff in the sum of seventy-two dollars; that said hogs were so killed and crippled in Hickory Grove Township as aforesaid, and that said killing and crippling was occasioned by the negligent failure of defendant to construct and maintain fences on the sides of said railroad, &c.

The justice issued a summons in the cause on the 27th of July, 1872, requiring the defendant to appear on the 24th day of August, 1872. The summons was returned by the constable, with the following return indorsed thereon: "The within summons was served by me, by delivering a copy to J. C. Atterbury, depot agent of the defendant, at Wrights in the county of Warren and Township of Hickory Grove, on the 27th day of July, 1872.

HERMAN HULSHER, Const."

On the 24th day of August, the day set for trial, the plaintiff appeared, but the defendant made no appearance. The justice heard the evidence of the plaintiff, and rendered a judgment in his favor for $144. On the 31st day of August, 1872, the defendant appeared, and moved the justice to set aside the judgment by default, and grant a new trial; this being overruled by the court, the defendant appealed to the Warren Circuit Court. On the 25th day of November, 1872,

34—VOL. LIII.

the defendant appeared in the Warren Circuit Court, and moved said court to dismiss the cause, because, 1st. The justice had not by law jurisdiction over the subject matter contained in the statement of the plaintiff in the cause. 2nd. The justice had not by the process in the cause, and the service thereof, acquired jurisdiction over the person of defendant, and in proceeding to judgment did so without authority of law, and the service is defective, and insufficient to confer jurisdiction. 3rd. The statement of the plaintiff filed with the justice, containing the grounds of his cause of action against defendant, is defective, uncertain and insufficient in law, and upon it plaintiff should not recover judgment. 4th. By the statute, under which plaintiff instituted his suit herein, an action in his name is not authorized, and the plaintiff is not entitled to recover, and cannot properly recover in an action in his own name."

This motion being overruled by the court, the defendant at the time excepted.

When the case came on to be heard, a jury was demanded. Eighteen jurors were called and examined by the parties as to their competency. The attorney for the defendant put the following question to three of the jurors, to-wit: "If the evidence in this cause should be evenly balanced between plaintiff, an individual, and defendant, a railway corporation, which way would you incline to find?" The jurors answered, that they would incline to find for the plaintiff. Whereupon, defendant challenged said jurors for cause. The court, before passing on said challenge, asked said jurymen, if they thought they could try the case fairly and without prejudice or bias? They responded, that they thought they could. The court then overruled the challenge made by the defendant, and the jurors were received and sworn, to which ruling of the court the defendant excepted.

The evidence introduced at the trial tended to prove; that plaintiff resided in Warren county, in Elkhorn Township; that he was the owner of twelve hogs; that eight of them were killed, six of which were of the Chester White breed,

and would weigh forty or fifty pounds each, the other two would weigh over one hundred pounds each; that the other four were crippled and were larger; that the hogs killed were worth from forty to fifty dollars; that the hogs got upon the railroad of defendant, from the plaintiff's woodland inclosed pasture, they got through the fence at a water gap at a small creek; the railroad was fenced through the pasture field, but the water gap was out of repair, so that the hogs got through; the material, of which the water gap was made, had become rotten, and some of the slats were off and out of repair; the hogs had gone through this place on the railroad several times before they were killed; that plaintiff had driven his hogs from the road several times before they were killed, but had not notified the agents of defendant that the water gap was out of repair; that the hogs were found on the railroad track all crushed to pieces, as if run over by the train on the road; that plaintiff made no demand of the defendant for pay for the hogs before bringing suit; that plaintiff had had hogs killed by trains of defendant before, and they refused to pay for them, and therefore no demand was made before suing; that after the hogs were killed and crippled, the defendant made a fence on each side of the road into the culvert, through which the water of the creek, where the water gap was erected, ran, which made the fencing safe; there was brush and weeds on the grounds of the defendant near the water gap; that the section boss passed the place frequently.

The defendant introduced evidence which tended to prove; that the hogs killed were not worth more than from twenty to twenty-five dollars; that the water gap was difficult to keep in a condition to keep hogs of the size of those killed from getting through; that it always had to be repaired after a rain; the section foreman had driven the hogs from the road at one time before they were killed, traveled the road almost daily, but had not observed that the water gap was out of repair at the time the hogs were killed.

At the close of the evidence, the court instructed the jury as follows:

"To entitle the plaintiff to recover, it must be satisfactorily shown to the jury from the evidence, that the hogs, on account of which this suit is brought, were struck, killed, or injured by defendant's railroad machinery on that part of the track passing through inclosed fields, and not at a public or private crossing, and that the hogs got on the track by reason of defective fencing on the part of defendant. The measure of damages, in the event of recovery, is actual market value of the hogs killed, including any depreciation in the market value on account of injuries inflicted by defendant's locomotive and machinery."

To the giving of which instruction the defendant at the time excepted.

The defendant then asked the court to instruct the jury,

First—" That upon the evidence in this case the plaintiff cannot recover."

Second—" The court instructs the jury, that before the plaintiff can recover in his action herein, he must show that defendant is a corporation organized and doing business under the laws of the State of Missouri."

Third—"The court instructs the jury, that under the statement in this case before the plaintiff can recover, they must believe from the evidence, that the hogs strayed upon the track of defendant at a point where the defendant was bound by law to fence its track, and if they further believe from the evidence, that the hogs strayed upon the railroad track of defendant from timber land, then, before they can find for plaintiff, they must believe from the evidence, that the killing and crippling were occasioned by the negligence of defendant in operating its locomotives and cars on its said road."

The court gave the instruction numbered two, asked for by the defendant, and refused those numbered one and three; to the refusal of the court to give the instructions numbered one and three the defendant excepted.

The jury found a verdict in favor of the plaintiff for fifty dollars.

The plaintiff moved the court to render a judgment for double the amount of the damages found by the jury, for the reason, that the action was founded on section 43, Wagner's Statutes, 310.

The court sustained the said motion, and rendered judgment in favor of the plaintiff for the sum of one hundred dollars, with costs, &c.

The defendant in due time filed its motion for a new trial, setting forth as grounds therefor all of the opinions of the court excepted to, as well as that the court had improperly rendered a judgment for double damages, and that the verdict of the jury was against the evidence, and against the law as given them by the court.

This motion being overruled by the court, the defendant again excepted.

The defendant then filed a motion in arrest of the judgment; because the justice of the peace had no jurisdiction of the cause or of the person of defendant; because the statement of plaintiff's cause of action was insufficient; because the suit could not properly be brought in the name of the plaintiff; and because the judgment and proceedings are otherwise erroneous.

This motion was also overruled by the court, and the defendant again excepted and appealed to this court.

It is first insisted by the defendant, as a ground for the reversal of the judgment, that the justice of the peace had no jurisdiction over the subject of the action, and that if any such jurisdiction did exist, that then the suit under the 42d section of the statute concerning Railroad Corporations (1 W. S., 310) should have been brought in the name of the State, and that no suit could be maintained under the 43d section of the same act in favor of or in the name of the party injured. By the fifth clause of the 3d section of the 1st article of the statute concerning Justices' Courts (2 W. S., 808) it is provided, that "in all actions against any railroad company in this State to recover damages for the killing, crippling or injuring of horses, mules, cattle or other animals, within their

respective townships, without regard to the value of such animals, or the amount of damages claimed for killing, crippling or injuring the same," justices of the peace and the Circuit Court shall have concurrent jurisdiction. This statute is general and comprehensive in its terms, applying to all railroad companies, and we have been referred to no special provision of any statute exempting defendant from its operation. From which it will be seen, that the justice of the peace clearly had jurisdiction over the subject matter of the action. But it is contended, that the action should have been brought in the name of the State of Missouri. The 42d section of the statute concerning Railroad Companies, before referred to, provides, that " all penalties imposed upon railroad companies by this chapter may be sued for in the name of the State of Missouri; and. if such penalty be for a sum not exceeding one hundred dollars, then such suit may be brought before a justice of the peace, and may be commenced by serving a summons on any director of such company." It is contended by the defendant, that this section was intended to include all actions brought under the chapter referred to, whether the damages were damages to persons for injuries to their property or otherwise, and that all such actions must be brought in the name of the State, and if for a sum over one hundred dollars, whether for injuries to stock or otherwise, the suit cannot be brought before a justice of the peace. I do not think this to be a proper construction of the statute.

By the 36th section of said chapter, all baggage of passengers with a handle or loop is required to be checked, and a duplicate given to the passenger or person delivering the baggage, "and if such check be refused on demand, the corporation shall pay to such passenger the sum of ten dollars to be recovered in a civil action; and further, no fare or toll shall be collected or received from such passenger, and if such passenger shall have paid his fare, the same shall be refunded; and on producing such check, or, if he have no check, on demanding his baggage, if it be not delivered to him he shall recover the value thereof." I suppose it would hardly be

contended, that under this section the passenger could not re. cover for his baggage in his own name, if it was not deliver- ed to him on demand ; the value of his baggage could not be considered a penalty within the contemplation of the 42d section ; but suppose the check for the baggage is refused, then the statute in the same section provides, that the corpo- ration shall pay to such passenger the sum of ten dollars to be recovered in a civil action. The question is, how would this civil action be brought? Would it have to be brought in the name of the State as contemplated in the 42d section for the recovery of penalties, or could it be recovered by the passenger in his own name ? We think that in such case the passenger might bring the action in his own name ; the mon- ey is to be paid to the passenger; he has a right to the mon- ey ; a civil action is given for its recovery ; and there is no reason why the suit should not be brought in his name.

Again. by the 38th section of the same act a penalty of twenty dollars is inflicted against a railroad company for a failure to ring the bell as therein provided, and it is therein provided, that it shall be sued for by the Circuit Attorney of the proper circuit within ten days, one-half to go to the County and the other half to the informer. It is not pro- vided in this section in whose name the suit shall be brought; the penalty is for the informer and the County ; the suit is to be brought by the Circuit Attorney, and it is natural that a provision should be made for bringing such suit in the name of the State ; and there are a number of other penalties pro- vided for in the act, which are not provided for the benefit of a person who is aggrieved ; in all such cases the suits should be brought in the name of the State; but where an individ- ual is injured or damaged by the act of the road, and a com- pensation is provided for the injury, although the compensa- tion is in the nature of a penalty, yet such cases are not within the contemplation of the 42d section providing for the collection of penalties in the name of the State, and we further think, that if the statute should even be so construed as to authorize the suit in such case to be brought in the

name of the State, that the word *may* as used in the statute, should not even then be construed to mean *shall*, but that it would only give an additional method of prosecuting such suits, and that a party who was to receive compensation for an injury, and being the real and only party interested in the suit, might at his election sue in his own name. In construing this statute so far as it applies to the rights of a private individual to recover for injuries received by him, it should be construed as a remedial and not a penal statute, and we cannot believe, that it was the intention of the Legislature to restrict individuals to sue for such injuries in the name of the State. This, so far as we know, has been the universal construction of this statute from the time of its passage. Out of hundreds of suits brought to recover double damages un der the 43d section of this statute, for the killing or crippling of stock, we know of none that were brought in the name of the State. We think this construction is reasonable, and will not now venture a different construction of the statute. It is thought by the defendant, that the act of the Legislature, concerning the jurisdiction of justices of the peace in cases for the recovery of damages for killing or crippling stock, only refers to cases brought under the fifth section of the statute concerning Damages and Contributions. (W. S., 520.) This statute only provides, that in certain cases damages may be recovered from railroad companies for killing stock without out proving negligence. The law concerning justices' courts provides, that in all actions against any railroad company in this State for killing, crippling or injuring horses, mules, cattle, &c., justices shall have jurisdiction without regard to value, &c.

This language is broad enough to include all such actions, whether brought under the one statute or the other.

The next objection made by the defendant to the action of the Circuit Court is, that the court overruled its challenge for cause to three of the jurors who tried the cause; this is also assigned as error by the defendant. The defendant, when the jury was being impaneled, asked three of the jurors, that

"if the evidence in the case should be evenly balanced between plaintiff, an individual, and defendant, a corporation, which way would you incline to find?" They answered, that they would incline to find for the plaintiff. The jurors were then challenged for cause. The court then asked those jurors, if they thought they could try the case fairly and without prejudice or bias? To this they responded, that they thought they could. The court then overruled the defendant's challenge of said jurors. . It is contended, that these jurors were incompetent to serve in the case, and we are referred to the case of the Chicago & Alton Railroad Co. vs. Adler, 56 Ills., 344, as an authority in point. That case is not exactly in point. In that case the same question was asked the jurors that was asked in this, but the jurors answered, that they would in such case lean against the defendant, and one of them stated, he would do so because the company were able to stand it, and he thought a private individual should "have a little might the advantage." The court did not in that case follow up the answer of the jurors by asking them, if they could try the case without prejudice or bias, as was done in this case, and, in fact, the answers of the jurors in that case were very different from the answer in the case under consideration, and tended more strongly to show prejudice in the minds of the jurors.

The learned judge, in delivering the opinion of the court in that case, says, that "when a juror avows that one litigant should have any other than the advantage which the law and evidence give him, he declares his incompetency to decide the case. He thereby proclaims, that he is so far partial as to be unable to do justice between litigants, or that he is so far uninformed, and his sense of right is so blunt, that he cannot perceive justice or, perceiving it, is unwilling to be governed by it."

This language may be proper in the case before the judge who used it, but we think that it is no evidence of stupidity or dishonesty in a juror in a case where the evidence is exactly balanced to be ignorant of the fact, that in such case the

law is in favor of the defendant, or that the evidence must preponderate in favor of the plaintiff to entitle him to recover. In such case if the juror had been further asked, that if he were instructed by the court, that when the evidence was equally balanced he must find for the defendant, whether he would then be governed by the instructions; if he answered that he would, he would certainly be competent. Our experience is that jurors usually obey the instructions of the court.

In this case the jurors answered the judge, that they could decide the case without partiality or bias; and to take their answers all together it is only shown, that they were not lawyers; in fact, it is generally understood, that jurors are not informed in reference to where the preponderance of evidence is required, and therefore it is usual for the attorneys in a case to ask the court to inform the jury by an instruction upon whom the burthen rests to prove the different issues in the case. The court so instructed the jury in this case, and we do not think that it was error in the court to accept the jurors objected to.

We think, that the service of the summons by the constable in this case was in substantial conformity to the statute, and that the defendant was properly in court.

The only additional points relied on by the defendant in this case grow out of the action of the court in giving and refusing instructions as to the law of the case. The defendant moved the court to instruct the jury, that upon the evidence in the case the plaintiff could not recover. The objection of the defendant to the instruction given by the court, and the grounds upon which the defendant asked the instruction before stated, seem to be mainly predicated on the fact, that there was no evidence on the part of the plaintiff to prove, that the defendant was a corporation. This was not necessary in this case; the defendant had appeared and defended as a corporation, using the very name in which it was sued; had in the progress of the case executed bonds filed in the cause authenticated by its corporate seal, and, in every

way, that it could be done, recognized its corporate existence, and tried and defended the case on the merits to final judgment in its corporate name. It was too late after this to complain that there was no proof of its corporate existence. The court improperly (as I think), under such circumstances, instructed the jury, that before plaintiff could recover, he must show, that defendant was a corporation organized and doing business under the laws of this State. We think this instruction was too strong against the plaintiff, for the reasons before stated, that defendant had by its acts waived any question which might have been made as to its corporate existence, but the plaintiff does not complain.

It is next complained by the defendant, that the court erred in refusing the third instruction asked for by defendant. This instruction tells the jury, that they must find, the "hogs strayed on the road at a point where the defendant was bound by law to fence its track." This was a question of law, which ought not to have been submitted to the jury without also telling them at what points the track was required to be fenced. The court, in the instruction given to the jury, had fairly instructed the jury on that subject, and properly refused the instruction as asked by the defendant. The instruction asked by the defendant also told the jury, that if the hogs entered on the railroad from timbered land, then in order to a recovery on the part of the plaintiff, the killing of the hogs must be shown to have been caused by the negligence of the defendant in conducting its trains. The statute requiring railroads to be fenced does not confine or limit the parts to be fenced to prairie or untimbered land, but the language used is, "along or adjoining inclosed or cultivated fields or uninclosed prairie lands, &c." The evidence in this case shows, that the land, from which the hogs escaped on to the road, was inclosed pasture lands, and this was sufficient.

This suit was brought and tried under the 43d section of the Railroad law (W. S., 310), and the instruction given by the court fairly presented the law of the case to the jury. The cause of action was substantially good, and the court did

right in doubling the damages found, on the motion of the plaintiff. (Norton vs. Hannibal & St. Joe. R. R. Co., 48 Mo., 387; Brewster vs. Link, 28 Mo., 147.) We see no substantial error in the case.

The judgment will be affirmed; the other Judges concur.