BARNETT v. ATLANTIC & PACIFIC RAILROAD COMPANY, *Ap-
pellant.*

1. **Railroad Double-damage Law**: IT IS PENAL AND NOT UNCON-
STITUTIONAL. That clause of the 43d section of the railroad law
which allows double-damages to the owner of stock killed on a rail-
road through the failure of the company to maintain such fences as
the law requires, is a police regulation chiefly intended for the pro-
tection of the traveling public, and is penal in its nature. But in
giving the penalty to the owner instead of the public school fund, it
is not in conflict with section 5, article 9, of the constitution of 1865,
which provides that " the net proceeds of all sales of lands and
other property and effects that may accrue to the State by escheat,
* * * or from fines, penalties and forfeitures," shall go to the
public school fund ; nor with section 8, article 11, of the constitution
of 1875, which provides that " the clear proceeds of all penalties
and forfeitures, and of all fines collected in the several counties for
any breach of the penal or military laws of the State," shall go to

that fund. Both of these provisions refer only to such fines, penalties and forfeitures as the Legislature might provide should accrue to the State.

2. **Action to Recover Double-damages:** JUSTICE'S JURISDICTION MUST APPEAR: PRACTICE IN SUPREME COURT. In an action for double-damages against a railroad company under the 43d section of the railroad law, brought before a justice of the peace, it must appear either from the statement filed with him, or from his transcript of the proceedings, that the stock was killed in the township in which the suit was brought. If it does not so appear, the objection of want of jurisdiction may be raised for the first time in the Supreme Court.

*Appeal from Pettis Circuit Court.*—HON. WILLIAM T. WOOD, Judge.

*C. M: Napton* for appellant.

1. The double-damage law is either compensatory or punitive. It was intended to be the remedy by which a person should be compensated for damage to his stock, or, it may be regarded as a fine imposed or penalty inflicted upon the corporation for failure to fence the road. Or, again, it may be considered as both compensatory and punitive. *Gorman v. Pacific R. R.*, 26 Mo. 450; *Trice v. Hann. & St. Jo. R. R.*, 49 Mo. 440; *Hudson v. St. L., K. C. & N. Ry. Co.*, 53 Mo. 536; *Seaton v. R. R. Co.*, 55 Mo. 416.

2. If it be a penal statute it cannot stand, because it violates section 8, article 2, of the constitution of 1875. Under that section fines and penalties can be imposed only for the benefit of the county school fund.

3. When looked upon as a law granting to the owner of stock compensation for his loss, it involves the gravest questions. The right of property carries with it the right to receive an equal and just compensation for a deprivation of it; and thus the equivalent becomes an incident of and necessarily incorporated with the right of property itself. One who is deprived of his property is entitled to its equivalent, but whenever he receives one cent beyond that; the very principle on which he receives anything is

violated.   A law authorizing this conflicts with that pro-
vision of the constitution which declares that no private
property can be taken for private use, with or without
compensation, unless by consent of the owner.   I do not
say that punitory damages may not be given in a proper
case.   They are given expressly in consideration of some
extreme suffering or hardship.   But the right to recover
double-damages expressly authorizes the taking of a cer-
tain amount of the property of one person and giving it
to another, after all damage has been fully compensated
for, and no such consideration as malice or bodily pain or
mental anguish enters into the case, as is true of cases
where punitory damages may be recovered.   And punitory
damages, or "smart money," were given at common law,
and do not arise out of the violation of a statute.   Section
.43 is in conflict with article 2, section 30 of the constitu-
tion.   It is that "no person shall be deprived of life, lib-
erty or property without due process of law."   The phrase
" due process of law," has been held equivalent to "the
law of the land," and a statute to be the law of the land
must be one which the Legislature had the power to pass.
*Sheppard v. Johnson*, 2 Humph. 285; *State v. Doherty*, 60
Me. 509; *State v. Simons*, 2 Spear 767.   These phrases re-
fer to pre-existing rules of conduct, and are designed to
exclude arbitrary power from every branch of the gov-
ernment.   They do not mean merely a legislative enact-
ment.

    4.   If the Legislature has power to authorize double-
damages, it also has power to authorize the damages to be
quadrupled or increased ten fold, or a hundred fold.   It is
a question of the constitutional power of that body, and
if it be once conceded to exist, then there is no protection
to the citizen save a supposable sense of justice in legisla-
tors, and if this should be illusory, confiscation could be
justified as easily as double-damages.   It may, however,
be said that double-damages are not excessive, and that as
soon as the damage, by being enlarged, became excessive,

it would conflict with article 2, section 25, of the constitution, which provides that excessive fines shall not be imposed. And this might be held to answer the reasoning next preceding. But we have seen that this double-damage cannot be regarded as a fine or penalty at all; if it be, it is unconstitutional. Now, I regard it as altogether compensatory, and the question recurs, can the Legislature force one to compensate another twice, ten times, or twenty times, for an injury? When regarded as compensatory only, there is no theory upon which the law can be supported. *Parish v. M. K. & T. Ry. Co.*, 63 Mo. 286 ; *A. & N. R. R. Co. v. Baty*, 6 Cent. Law Jour. 148.

5. There was nothing in the transcript from the justice to show that he had jurisdiction; and the complaint filed before him nowhere appears in the record.

*Heard & Jackson* for respondent.

1. The primary object of this law is the protection of the traveling public, and that, in this view, it is a constitutional police regulation, has been uniformly held. *Gorman v. P. R. R. Co.*, 26 Mo. 441 ; *Clark v. Hann. & St. Jo. R. R. Co.*, 36 Mo. 219 ; *Trice v. Hann. & St. Jo. R. R. Co.*, 49 Mo. 440 ; *Thorpe v. Rut. & Bur. R. R.*, 27 Vt. 140 ; Cooley on Const. Lim., 573, 579. Once concede this point and every other difficulty is removed. That portion of the section which requires railroads to fence their tracks, is the police regulation, and the portion which makes them liable for double-damages is remedial. If the Legislature has power, as unquestionably it has, to require railroads to be fenced, then it has power to compel a compliance with the requirement. If it can prohibit the evil, it can apply the remedy. The remedy is a matter of legislative discretion, and the Legislature may provide such liability, to be enforced in such manner, and payable to such persons, as, in its judgment, will be most effective to secure a compliance with the law. And this discretion and judgment will

not be interfered with by the courts. Cooley on Const. Lim., 168, 169; *Phelps v. Racey*, 60 N. Y. 10. As an incident to this remedy is the compensation that the injured party receives.

2. The remedy in this law may be said to have a dual character—that is, it is penal and compensatory. Penal, in so far as it imposes a liability for a failure to comply with the requirements of the law, and compensatory in so far as it provides that the liability shall be for the benefit of a party injured by the failure to comply. But this compensatory feature of the remedy cannot abridge the constitutional power of the Legislature to establish the police regulation as the prime object of the statute.

3. For this argument, it must be taken as conclusive that the legislative judgment was that the most efficacious remedy was to be found in allowing a party suffering a loss to recover double-damages—just as in some cases of trespass the best remedy was considered to be in giving the injured party double-damages, and in other cases of trespass treble-damages; as in cases of protests of notes and bills, the best remedy was found in giving four and ten per cent. damages; as in appeals to this court, the best remedy to prevent frivolous appeals was supposed to be to give ten per cent. damages; as in order to prevent neglect on the part of any one authorized to solemnize marriages, any person who will, may recover the $50.00 imposed for failing to record certificates; as in cases of mortgagees failing to enter satisfaction, an absolute penalty of ten per cent. of the mortgage money, in addition to actual damages, is given to the debtor; as by section 36 of this same law, the $10 imposed for failing to deliver a baggage check, is given to the owner of the baggage; and as in all *qui tam* actions the best remedy is considered to be offering to some individual a part or all of the fine or penalty. But, it is said, if the Legislature can impose double-damages, it may go further and impose ten-fold, or a hundred-fold, the actual value of the stock. So it might, and so it should, if

necessary to enforce obedience to a regulation designed for the security of human life. In fact, the history of this legislation proves that the imposition of this double liability is an effort to secure a sufficient remedy for this police regulation.

4. This law does not violate section 5, article 9, of the constitution of 1865. This section is intended to direct the disposition of all sums that arise from the various sources mentioned, and which reach the public treasury; and having once been paid into the treasury as the net proceeds of a fine, penalty or forfeiture, this section forbids their use for any other purpose, or their application to any other fund than a public school fund. It still leaves to the Legislature its discretion as to remedies, and does not prescribe that it shall adopt any certain remedy. It means if the Legislature, in its discretion, enacts that a penalty shall be paid to the public, then such penalty, when so paid, shall become part of a certain fund.

5. The record shows that a statement was filed with the justice of the peace, that the statement was read to the jury, and offered in evidence in the circuit court. If it was regular, the circuit court acquired jurisdiction upon receipt of the case from the justice. It will not be presumed that the statement was insufficient, for that would be to presume error. When a court has jurisdiction of the subject matter, the propriety and regularity of its action will be presumed until the contrary appears. Freeman on Judgs., § 124; *State v. Weatherby*, 45 Mo. 17; *Huxley v. Harrold*, 62 Mo. 516.

6. This objection, not having been raised below, cannot be urged here on appeal. *Woods v. Mosier*, 22 Mo. 335; *Kennayde v. P. R. R.*, 45 Mo. 255; *Hause v. Carroll*, 37 Mo. 579; *Beard v. Parks*, 44 Mo. 244.

HOUGH, J.—This was an action under the 43d section of the railroad act for double-damages for stock killed in consequence of the failure of the railroad company to erect

and maintain fences as provided by law. The plaintiff had judgment and the defendant has appealed.

The defendant contends that so much of the 43d section as entitles the plaintiff to double-damages is unconstitutional, whether the statute be considered as compensatory or penal in its nature. If it be regarded as compensatory only, it is argued that it is unconstitutional, in that it gives the party injured twice the amount of all damages sustained by him, and thus transfers the property of one man to another as a gratuity, and not in the redress of any injury. If it be penal, it is claimed that it is unconstitutional, in that the penalty is given to the person injured, and not to the school fund.

It is manifest that if this statute can be maintained at all, it must be maintained upon the ground that it is a
1. RAILROAD DOU-  penal statute. Parties civilly injured are by
BLE DAMAGE LAW:  way of recompense, entitled only to full and
it is penal and not
unconstitutional  adequate compensation for all the damages
sustained by them, and an act of the Legislature which should provide that in all civil actions the plaintiff should recover twice the amount of the damages actually sustained by him, would undoubtedly be declared to be unconstitutional and void.

The statute under consideration is unquestionably a penal statute. It was so regarded by this court in the case of *Gorman v. Pacific R. R.*, 26 Mo. 450, when single-damages only were recoverable under its provisions. In *Trice v. Hann. & St. Jo. R. R.*, 49 Mo. 440, it was said "while the protection of property of adjacent proprietors is an incidental object of the statute, its main and leading one is the protection of the traveling public. To insure such protection railroads are imperatively required to fence their tracks, and the penal liability deemed necessary to enforce this requirement, is a matter of legislative discretion." A critical examination of the case of *Hudson v. St. Louis, Kansas City & Northern Ry.*, 53 Mo. 536, will show that the sum to be recovered under this section was there regarded

as a penalty.   The same may be said of the cases of *Seaton v. Chicago, Rock Island & Pacific R. R. Co.*, 55 Mo. 416, and *Parish v. Missouri, Kansas & Texas Ry.*, 63 Mo. 286.   In the last two cases it is true it was said that the statute was both penal and compensatory; but it is evident that the word compensatory was only used to convey the idea that the party aggrieved was the person authorized to sue for and recover the penalty, and thus receive compensation for his loss.   The act in question was chiefly intended for the protection of persons who are transported in railway carriages, and similar enactments have repeatedly been held to be a proper exercise of the police power of the State.   Cooley's Con. Lim., 578, and authorities cited. Being a penal statute, in the absence of any constitutional restriction, the Legislature may lawfully make such disposition of the penalty imposed by it, as will, in its discretion, best subserve the purpose of the enactment.   Instead of giving the whole of the penalty to the State, or the county, or of dividing the penalty and providing for a *qui tam* action, the whole of the penalty is given to the party aggrieved, and the method adopted is doubtless a most efficient one for enforcing the statute.

It is said, however, that the 5th section of article 9, of the constitution of 1865, and the 8th section of the 11th article of the constitution of 1875, prohibit the appropriation of this penalty to private uses, by requiring that all penalties shall go to the school fund.   The section cited from the constitution of 1865 provides that " the net proceeds of all sales of lands and other property and effects that may accrue to the State by escheat,      *    *      or from fines, penalties and forfeitures, shall be securely invested and sacredly preserved as a public school fund, and faithfully appropriated for establishing and maintaining free schools and the university."   The enactment of penal laws and the imposition of penalties for their violation, is a matter which the constitution has left to the Legislature, and the constitution does not provide that all penalties im-

posed shall accrue to the State, nor that any shall so accrue ; that matter has likewise been left to the Legislature. Such penalties only as the Legislature provides shall accrue to the State, are to go to the school fund under the constitution of 1865.

The language of the constitution of 1875 is slightly variant from that of 1865, but its purport, we think, is substantially the same. It is as follows:   " *      *   The clear proceeds of all penalties and forfeitures, and of all fines collected in the several counties for any breach of the penal or military laws of the State,      *      *      shall belong to and be securely invested and sacredly preserved in the several counties as a county public school fund." Penalties, forfeitures and fines collected in the several counties—that is, collected by the county authorities for the benefit of the county or the State.   This section clearly refers to penalties accruing to the public, and not to penalties recovered by private persons for their own use.

Since 1855 we have had a statute requiring that " all fines and penalties imposed, and all forfeitures incurred in any county, shall be paid into the treasury thereof for the benefit of the school fund of said county."   · Rev. Stat. 1855, p. 452; Rev. Stat. 1865, p. 867.   The statute of 1845 was substantially the same, Rev. Stat. 1845, p. 251.   Since 1835 the general revenue law has contained a provision requiring the sheriffs of the several counties to collect and account for all the fines, penalties, forfeitures, and other sums of money accruing to the State or county in virtue of any order, judgment or decree of a court of record. These provisions were on the statute book when the constitution of 1875 was framed and adopted, and the section of that constitution above cited clearly refers to these statutes, and will embrace such others of a similar character as the Legislature may hereafter enact.   That the statutes cited only include penalties accruing to the public, is too plain for argument.

The case of *Atchison & Nebraska R. R. v. Baty*, decided

by the Supreme Court of Nebraska at its October term, 1877, we do not conceive to be in point. The statute passed upon in that case is not like ours, but gave the owner of live stock killed on the railroad track double its value, unless the value was paid within thirty days after demand made on the company therefor. There the double-damages were given, not for the violation of any criminal or penal statute passed by the Legislature in the exercise of its police power, but as a penalty imposed upon the defendant in its character as a private person for delay in making payment after demand made, and the law was, therefore, declared to be partial and void. It was also said to be in conflict with a constitutional provision in relation to fines and penalties.

The judgment in this case must be reversed, however, for another reason. The transcript of the justice fails to show that he had jurisdiction of the subject matter of the action, and the statement filed before the justice does not appear in the record. It must appear from the statement filed, or from the justice's transcript, that the stock were killed in the township where the suit was brought. This does not appear, and the question of jurisdiction as to the subject matter may be raised for the first time in this court. *Haggard v. Atlantic & Pacific R. R.*, 63 Mo. 303; *Iba v. Hannibal & St. Joseph R. R.*, 45 Mo. 469. The judgment must, therefore, be reversed, and as it appears that a statement was filed which is not before us, we will remand the cause. All concur.

2. ACTION TO RE-
COVER DOUBLE-
DAMAGES: jus-
tice's jurisdiction
must appear:
practice in su-
preme court.

REVERSED.