## CALVIN W. ULRICH, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.

### In Banc, April 1, 1920.

1. **IMPEACHMENT:** Place of Residence.   Objections to an inquiry of witnesses for their knowledge of plaintiff's general reputation in a given place, is not an objection to their competency to testify.

2. ———: General Reputation: In Community.   Plaintiff is subject to impeachment like any other witness, and general reputation is admissible to prove his character as it exists at the time of the

trial, and reputation, to be competent, must be made up of what is generally said of the witness by those who have sufficient opportunity to observe his life and actions, and ordinarily they are the persons in the neighborhood or community in which he resides, but it is not impossible for him to have a general reputation for veracity in more than one community.

3. ——: ——: ——: **Former Residence.** The discretion of the trial court is not abused by the admission of testimony relating to the witness's reputation in a community in which, beginning nine or ten years previously, he resided for several years, and in which he was widely and generally known and which he frequently revisited and there plied his vocation of selling spectacles and jewelry.

4. ——: ——: **Neighborhood and Community.** The term "neighborhood" or "community" is not susceptible of exact geographical definition, but means in a general way the place where the person has established a reputation, whether that be his present or former residence or place of business. It is not necessarily confined to a particular locality, but may be co-extensive with his residence or place of business, or both, or to places of present and former residence, if he in such places came into such frequent association with persons there as to establish a reputation. In the absence of a showing to the contrary, the inquiry as to his reputation should be confined to the neighborhood of residence; but where there are additional facts to show the establishment of a reputation elsewhere, the court does not abuse its discretion by permitting witnesses to testify what his general reputation in such other place is or was.

5. **INSTRUCTION: Injuries at Other Times and Places.** The trial court did not commit prejudicial error in instructing the jury that the mere fact that plaintiff at some time may have sustained broken ribs and other injuries was not proof that he was injured at the time and in the manner asserted by him, if there was direct testimony that he was neither on nor within several feet of defendant's car at the time he claims to have been injured and he did not call a doctor or notify defendant for four months thereafter.

6. ——: **Conflicting.** An instruction authorizing the jury to find for defendant if they believe "from all the facts and circumstances in the case" that plaintiff had not received any injury is not in conflict with another for defendant requiring plaintiff to make out his case "by the greater weight of the credible evidence in the case." They do not set up different standards of the weight of evidence requisite to warrant a finding, but the one places the burden on plaintiff and the other presents the matter from the point of view of defendant, on whom rests no such burden.

7. ———: **Expert Testimony: No Injury.** Error in an instruction concerning expert testimony is not prejudicial, where the testimony has reference to the character, extent and permanency of plaintiff's injury and spends its force on the issue as to the amount of damage, and the jury finds that he was not injured by defendant at all. Besides, the instruction here complained of was, in substantially the same form, approved in Hoyberg v. Henske, 153 Mo. l. c. 75, and numerous later cases.

8. ———: **To Disregard Testimony.** An instruction for defendant telling the jury that they were authorized to disregard testimony, if any, opposed to obvious physical facts or in contradiction of the common knowledge and experience of mankind, was not prejudicial under the facts of this case, where both court and jury had full opportunity to observe whether plaintiff's actual physical condition and conduct accorded with his testimony.

9. **FAIR TRIAL: No Exceptions.** Where no objection was made to the admission of testimony that plaintiff's pretended injuries were simulated, no request was made that defendant's counsel be rebuked for their conduct or that the jury be discharged, and no exceptions were taken to the conduct of the trial in the manner complained of on appeal, it cannot be ruled that plaintiff was not afforded a fair and impartial trial.

Appeal from Knox Circuit Court.—*Hon. James A. Cooley,* Judge.

AFFIRMED.

*L. F. Cottey* and *James C. Dorian* for appellant.

(1) On the trial the defendant introduced four witnesses from Putnam County, who severally testified, against the objections of counsel for plaintiff, that they were acquainted with the general reputation of plaintiff, in the eastern part of Putnam County, for honesty, truth, veracity and morality, and that it was bad. These witnesses also testified that the plaintiff had not lived in Putnam County for about ten years, but that he had lived in Moulton, Iowa, for the past seven or eight years and that was his home. These witnesses had never lived in Moulton, and did not claim or pretend to know or testify as to the reputation of plaintiff in Iowa. We

insist that the court erred in overruling our objections
to the testimony of said witnesses. State v. Shouse, 188
Mo. 478; State v. Parker, 96 Mo. 390. (2) Instructions
should fairly submit the issues presented by the plead-
ings and the evidence. "The jury should try the case
according to the law and the evidence, and not otherwise.
While a jury is entitled to draw inferences, they must
be deduced from the testimony, not from conjecture.
The evidence is that plaintiff was injured while trying
to board defendant's car at Mine No. 1, as alleged in
his petition. There is not a glimmer of evidence, near
or remote, that plaintiff received the injuries he com-
plains of at any other time or place. Instructions 2 and
3 given at the request of defendant are erroneous and
constitute prejudicial error. Flever v. Railroad, 216 Mo.
209; Willmott v. Street Ry. Co., 106 Mo. 535; Crow v.
Railroad, 212 Mo. 610; McElvain v. Railroad, 151 Mo.
App. 148. (3) Defendant's Instructions 4 and 5 are in
conflict. Said Instruction 4 correctly stated the law,
but said Instruction 5 did not. Each one authorized a
verdict for the defendant. Said Instruction 4 and 5 are
separate and independent declarations of law, and are
directly in conflict, one of them declaring the law correct-
ly, the other erroneously. This court cannot determine
by which one the jury was guided. The error is mani-
fest and prejudicial. Shepard v. Transit Co., 189 Mo.
373; Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. 612;
Mining Co. v. Fidelity & Casualty Co., 161 Mo. App. 208;
Ross v. Street Ry. Co., 132 Mo. App. 481. (4) Defend-
ant's Instruction 6 is erroneous and should not have
been given in this case. Said instruction, in effect,
destroys the probative force of the evidence of the wit-
nesses, Drs. Prince and Downing, who testified for the
plaintiff in their professional capacity, and also operated
on him. There was no objection to their competency to
testify as medical experts. They were competent wit-
nesses; and their testimony is of probative force be-
cause they were the attending physicians. 14 Ency. Ev.
p. 369. A further objection to said Instruction 6 is that

it does not direct the jury to consider the testimony of said expert witnesses in connection with the other evidence in the case. Rose v. Spies, 44 Mo. 23; City of Kansas v. Butterfield, 89 Mo. 648; Smith v. Tel. Co., 113 Mo. App. 443. Said Instruction 6 is based on the assumption that the jury was as well qualified to judge about the injuries plaintiff was complaining of, and their effect, as the attending physicians who examined plaintiff and operated on him to save his life. That was manifest error, because this is not a case that is within the knowledge and common sense of the average layman. Ewing v. Goode, 78 Fed. 442. (5) Defendant's Instruction 7 is erroneous under the evidence. Phippin v. Mo. Pac. Ry. Co., 196 Mo. 343. There is no evidence in the instant case that any witness testified to a state of facts in opposition to obvious physical facts or contradictory to the common knowledge or experience of men. The giving of said instruction was not only erroneous, but it was prejudicial error. (6) The court erred in not affording the plaintiff a fair and impartial trial on the issues raised by the pleadings in this cause. D. G. Co. v. Williams, 176 S. W. 476; Wright v. Kansas City, 187 Mo. 678; State v. Rogers, 108 Mo. 204; State v. Gessell, 123 Mo. 535; Whart. Cr. Ev. (9 Ed.) p. 472; State v. Parker, 96 Mo. 382; 1 Greenleaf, Ev. p. 259; State v. Houk, 169 Mo. 654.

*J. G. Trimble* and *Campbell & Ellison* for respondent.

(1) The evidence of the witnesses that plaintiff's reputation in Unionville and the east part of Putnam County, at which place he had lived for some forty years before he moved to Moulton, was bad, was admitted without objection. The so-called objection is not an objection, but a mere argument. Williams v. Williams, 259 Mo. 250. Granting the question as to whether the witness was acquainted with the plaintiff's general reputation was erroneous, and that sufficient objection was made, still such error was harmless. The question

that followed the one last mentioned was, "What was that reputation, good or bad?" No objection was made to that question in the trial court. St. Louis v. Railroad, 248 Mo. 25; Semple v. Railroad, 152 Mo. App. 29; Rice v. Waddill, 168 Mo. 120; Stoner v. Royar, 200 Mo. 454; State v. Diemer, 255 Mo. 350. (2) Counsel now assert the evidence of plaintiff's general reputation in Putnam County was too remote. That objection was not made below and cannot be urged here. City of St. Louis v. Company, 248 Mo. 10. (3) The evidence was admissible no matter what objections were or could have been made. The evidence in this case reveals that plaintiff from youth to past middle life lived in the east part of Putnam County and that his conduct was such that he became a notorious character in that part of the country. After he passed middle life he moved to Moulton, Iowa, a distance of only a few miles. Thereafter, and until the time of the trial, he passed through Putnam County frequently and visited his step-daughter and plied his trade of selling spectacles and jewelry. We concede that a man who has acquired a bad reputation may reform, but there is, in this case, no evidence of reformation on the part of the plaintiff. The whole evidence in this case, considered, reveals the plaintiff is pursuing the sort of life that earned the reputation the witnesses gave him in the home in which he lived for more than forty years. He became so notorious that when he returned to his old home in Putnam County his very presence revived unfavorable talk about him. Coates v. Sulau, 26 Pac. 720; Hamilton v. People, 29 Mich. 195; Stratton v. State, 45 Ind. 468; Mitchell v. Com., 78 Ky. 219; Willard v. Godenough, 30 Vt. 393; State v. Lanier, 79 N. C. 622.

BLAIR, J.—This is an action for damages for injuries appellant alleges he sustained by reason of negligence of servants of respondent in charge of one of its trains. There was a verdict against appellant. The injury is alleged to have occurred November 29, 1911.

Two previous actions were instituted and dismissed before this one was begun. There was a previous trial, or mistrial, in this case.

Appellant claims that while he was attempting to board respondent's train at Mine No. 1 in Adair County, other cars were permitted violently to strike the car he was getting upon and that he was thrown and injured. There was evidence tending to prove injury due to the cause alleged. Respondent offered evidence tending to prove appellant was not injured at all at the time and place or in the manner alleged. There was testimony offered to impeach appellant, and he employed the same weapon against some of respondent's witnesses.

Appellant complains that the trial court erred in (1) admitting certain impeaching testimony; (2) instructing the jury; and (3) so conducting the trial that it was unfair to appellant.

With respect to the first assignment the evidence tends to show that for many years prior to 1907 appellant had lived in the eastern part of Putnam County, Missouri; in 1907 he left Putnam County, and for a year or so had no established place of residence; he was in various States for short periods; in 1908 he established his headquarters in Moulton, Iowa, his wife staying there, and about 1910 he went to housekeeping in that town; he traveled about selling spectacles and jewelry; after moving out of the eastern part of Putnam County he continued frequently to revisit it and pass through it and ply his vocation there; Moulton is but a few miles north of the eastern part of the north boundary of Putnam County; respondent offered testimony to show appellant's reputation was bad in Moulton at the time of the trial, in 1916, and then offered testimony tending to show his reputation in the eastern part of Putnam County where he formerly lived was bad at the time of the trial and had been at the time he left the county.

Other facts are stated in connection with the discussion of questions to which they are relevant.

I.   Upon the question concerning the impeaching testimony of which he complains, appellant states in his brief that the objections he made on the trial were to the competency of the witnesses "to testify; and not as to what they would testify to." This construction of his objection is relied on by appellant to break the force of respondent's contention that he

**Reputation.**

entirely failed to object on the trial to testimony as to his reputation, the admission of which he now assigns for error. He states his position to be that the witnesses "disqualified themselves to testify as to the reputation of appellant in Putnam County when they admitted he had not lived in that county" for a number of years. The impeaching witnesses were not asked, at the time the objections were made, concerning appellant's reputation at some past time, but the question put and objected to related to appellant's reputation in the eastern part of Putnam County at the time of the trial. It is apparent from this that the objection raises no question concerning the proper exercise of the trial court's discretion in admitting evidence of reputation at a former time, but presents, at most, a question of *place* of reputation. [Veitinger v. Winkler, 8 Mo. App. l. c. 562; State v. McLaughlin, 149 Mo. l. c. 31, 32.] As a witness, appellant was subject to impeachment like any other witness. Viewed as an instrument of evidence, the improbability that a witness will tell the truth is relevant matter. This is affected by his character as it exists at the time of the trial. His character thus becomes a proper subject of attack. General reputation is admitted to prove his character. This reputation, to be competent, must be made up of what is generally said of the witness by those who are regarded by the law as having sufficient opportunity to observe his life and actions. Ordinarily, these are they "among whom he dwells, or with whom he is chiefly conversant; . . . a man's character is to be judged by the general tenor and current of his life and not by a mere episode in it. [Per BRACE, J., in Waddingham v. Hulett, 92 Mo. l. c. 534.] Usually

those who reside in the "neighborhood" or "community" in which a witness resides are assumed to have the sort of opportunity to observe him which will enable them to speak justly of his character, and thus form the reputation which will correctly evidence it. This assumption is made because it is the usual order of things. It is obvious that instances are easily conceivable in which the people of the neighborhood of the residence of a witness might have scant opportunity for contact with him; while in some other community he may spend his days and transact his business, and the people there be afforded every opportunity to form and express a just opinion. Nor is it impossible for one to have a general reputation for veracity in more than one community. Now, appellant's objection to the competency of the witnesses raises the question, if it raises any, whether they had shown themselves qualified to speak of a reputation which was the result of what was generally said by persons in such contact with appellant that they were afforded opportunities to observe him and his course, of the kind which the law requires before it recognizes reputation, resulting from what they say, as competent.

In this case appellant had lived at Moulton for several years. Some nine or ten years before he had lived in the eastern part of Putnam County and was generally and widely known by the people there. Moulton was but a few miles from the eastern part of Putnam County. County and State lines, as such, do not materially interfere with the spread of reputation. Appellant frequently revisited his old home and continued to ply there his vocation of spectacle and jewelry selling. He was still well and generally known in that community, as he had been for a great many years. With respect to the objection as to place of reputation, the trial court had a discretion to exercise which cannot be reviewed unless it was obviously abused. We cannot hold it was abused in this case. In Houk v. Branson, 17 Ind. App. l. c. 121, the reputation of a witness was proved to be bad in Crawfordsville, where he then lived. Other

45—281 Mo.

evidence that his reputation in his old home in the same county, where he lived several years before and which he frequently visited and where he continued to be known, was held admissible.

In Hauk v. State, 148 Ind. 1. c. 261, testimony was offered to show that the reputation of the witness in Covington, his home at the time of the trial, was bad. Testimony was then offered to show that the reputation of the witness at Hillsboro, fifteen miles away, where the witness lived fifteen months before, was also bad. It appeared that the witness was a doctor (as here) and continued to practice (as here) in the place of his former residence. The court held the testimony admissible.

"The general rule is that, in order to impeach a witness by proof of bad character, the predicate is a knowledge of his character in the community or neighborhood in which he resides; but the term 'community' or 'neighborhood' is not susceptible of exact geographical definition, but means in a general way where the person has established a reputation. The inquiry is not necessarily confined to the domicile of the witness, but may extend to any community or society in which he has a well-known or established reputation. It is a matter of common knowledge that many men have their domiciles at one point and business at another, spend much of their time at the latter, and, in fact, have a better established reputation there than at the place of their actual domicile." [Baer & Co. v. Cooperage & Box Mfg. Co., 159 Ala. 1. c. 502, 503.] In this case the reputation in Mobile of a witness domiciled in Baltimore was admitted.

"A man's 'neighborhood' is not necessarily confined to the particular locality in which he resides, but is co-extensive with the extent of territory occupied by those with whom he associates and frequently comes in contact; one man's 'neighborhood' may be a small hamlet, while the neighborhood of another may be a county or state." [Peters v. Bourneau, 22 Ill. App. 1. c. 179, 180.]

The word "neighborhood" comprises "the territory wherein the person in question resides, moves, circulates,

does business and has intercourse with his fellows.'' [People v. Loris, 131 App. Div. l. c. 129.]

In State v. Henderson, 29 W. Va. l. c. 167, the court upheld the admission of testimony that the reputation of defendant was bad in his old home community, whence he had removed seventeen years before, but in which he was well known and in which he continued to transact business and visit frequently. The court said: ''The manifest object of the rule is to find out the general reputation of the person sought to be impeached or sustained; and certainly where a man is well known, he has a reputation either for honesty or dishonesty. Anyone, who is well acquainted with those with whom such a person associates, and who know him well, is competent to speak of the reputation he has among them.''

In Boswell v. Blackman, 12 Ga. l. c. 593, it was proposed to prove the general reputation of the witness ''in Russell County.'' The Supreme Court of Georgia said: ''Disconnected with any other proven facts, I should hold that the last named question would not do; but before putting it, the plaintiffs in error had proven, by the impeaching witnesses, that they had known the witness sought to be impeached, for the last eight or ten years, in the County of Russell, Alabama; that he was generally known, and had a general reputation in the county. These things being true, the question propounded comes within all the reasons upon which the other question is held proper. The impeachment must be by persons acquainted with the witness. And they are called to speak of his general character for truth and veracity—not the world over, or in London, or Paris, or Columbus, but in that circle where his real character is best known, to-wit: in the neighborhood where he lives. Now, when a witness is generally known, and has a general reputation in a county, that county may be fairly considered his vicinage; it is fair to infer, under such circumstances, that his true character for truth is as well known in that county, as men's character for truth is known ordinarily in their neighborhood.''

In Powers v. Presgroves, 38 Miss. l. c. 241, 242, it was said: "The rule in relation to proof of character is, that the inquiry must be made as to his *general reputation, where he is best known*—what is *generally said of* him, by those among whom he dwells or with whom he is chiefly conversant. Ordinarily, the witness ought to come himself from the neighborhood of the person whose character is in question. But the court, unless under peculiar circumstances, will not undertake to determine, by a preliminary inquiry, whether the impeaching witness has sufficient knowledge of the fact to enable him to testify; but will leave the value of his testimony to be determined by the jury. [1 Greenleaf, Ev. 601, sec. 461.] What is the plaintiff's 'neighborhood,' whether one, or five, or ten miles, and the credit to be given to the witnesses, near or remote, or the character he bears in the compass of one mile, or in the county in which he lives, are all questions, under the limitations above stated, to be considered and determined by the jury, in arriving at his *general character.*"

In State v. Cushing, 14 Wash. l. c. 535, the court held it error to exclude certain impeaching testimony, saying: "If in the course of business or otherwise Newman had acquired a reputation for truth and veracity in the City of Spokane, it was competent to be given in evidence, although his place of residence may have been distant therefrom some five or six miles, as shown."

Mr. Greenleaf, in a passage frequently approved by this court, states that a witness to reputation "must be able to state what is *generally said* of the person, by those among whom he dwells, *or* with whom he is generally conversant."

It is apparent that any rule which would draw an arbitrary line about the spot of the residence of every witness, and by this method fix the place of origin of competent reputation, would not only violate the principle upon which reputation is admissible to prove character, but would be absurd in the extreme. With respect to such place of origin, the trial court has some discretion.

In the absence of any showing to the contrary, it is doubtless proper to confine the inquiry to the neighborhood of residence. In this case there were sufficient additional facts to justify the admission of the testimony. Its weight was then for the jury, and the distance of appellant's present place of residence was a matter to be considered by them in that connection.

The case of State v. Shouse, 188 Mo. 1. c. 478, is cited by appellant. That case decides, it seems, that when there is evidence of good reputation at the place of residence at the time of trial and no evidence of bad reputation at that time, evidence of bad reputation in another State some seven or eight years *prior to the trial* is not admissible, on the ground that time for reformation had intervened, citing 1 Greenleaf, Evidence, sec. 459, and Missouri cases. That is not this case. Here the testimony, so far as concerns the questions to which the objections were made, had to do with appellant's reputation at the time of trial. The case more resembles State v. Miller, 156 Mo. 78, which is distinguished in State v. Shouse. In this case appellant's objection was, as he expressly states, made to the competency of *the witnesses,* "as to their competency to testify; and not as to what they would testify to." The question concerning the remoteness in time of reputation is not in this case.

II. The court instructed the jury, in substance, that the mere fact that appellant at some time may have sustained broken ribs and other injuries was not proof that he was injured at the time and in the manner he claimed. Appellant does not contend there was anything in the character of his injuries which pointed to injury by a railroad accident rather than some other. As we understand it, his objection is that the court submitted an issue not made by the evidence. He says: "There is not a glimmer of evidence, near or remote, that plaintiff received the injuries he complains of at any other time or place." There was

Other Injuries.

direct testimony of several witnesses tending to show appellant was neither on nor yet within several feet of respondent's car at the time he claims to have been injured by its sudden movement. He first called a doctor about four months after the day on which he now says he was hurt. He notified respondent of his claim at yet a later date. Whether he was injured at the time and place he states and by respondent's car was the dominant issue in the case. The contention he makes must be overruled.

III. It is insisted respondent's Instructions 4 and 5 conflict and that the conflict is prejudicial. The question raised pertains to the requirements in these instructions respecting the weight of the evidence necessary to justify a finding. It is conceded Instruc-

Conflicting Instructions. tion 4 is correct in requiring appellant to make out his case "by the greater weight of the credible evidence in the case." It is argued that Instruction 5, in authorizing the jury to find for *respondent* in case they believed "from all the facts and circumstances in the case" that appellant had *not* received any injury," etc., is drawn into conflict with Instruction 4, in this, that it sets up a different and incorrect standard as to the weight of evidence requisite to warrant a finding. This objection overlooks the fact that Instruction 4 has to do with the burden upon appellant, and Instruction 5 presented the matter from the point of view of respondent, upon whom no such burden rested. Further, the omission of the phrase respecting the necessary weight of evidence, even from an instruction in which it could properly be used, is not necessarily reversible error. [Norris v. Railroad, 239 Mo. l. c. 717, 718.]

IV. The instruction concerning expert testimony was in substantially the same form as that approved by Court in Banc, in the face of the same objections made

here, in Hoyberg v. Henske, 153 Mo. 1. c. 75, 76. This decision was followed in Markey v. Railroad, 185 Mo. 1. c. 364; Burns v. Ice & Fuel Co., 187 S. W. 148, 149, and Gold v. Jewelry Co., 165 Mo. App. 1. c. 166.  In addition, the expert testimony had reference to the character, extent and permanence of appellant's injury, and spent its force on the issue as to the measure of damages.  The jury found appellant was not injured by respondent at all.  In view of this the instruction becomes unimportant.

*Expert Testimony.*

V.  The court gave an instruction which, in substance, authorized the jury to disregard testimony, if any, opposed to obvious physical facts or in contradiction of the common knowledge or experience of mankind.  Appellant founds his criticism of this instruction upon a recapitulation of the testimony, pro and con, upon the question whether he was upon the car or standing some five or six feet away from it when the shock came.  The instruction had no reference to this testimony.  There was testimony tending to show that after the time he alleged he was injured most seriously, appellant was seen to be walking and conducting himself in a manner which his experts conceded, if true, would disprove his claim in vital respects.  Further, he offered evidence that designated muscles were so completely paralyzed that he had entirely lost control of certain organs of elimination. If his testimony was true, the evidence of these things must have obtruded itself upon the jury.  Both the trial court and the jury, during the *four days* of the trial, had full opportunity to observe whether appellant's actual condition and conduct accorded with his testimony in this connection.  There was evidence that appellant, if suffering from the injuries and conditions he claimed, would present a described physical appearance.  The jury saw him and could judge for themselves whether his appearance corroborated or disproved his claim.  In the circumstances the instruction is not open to the criticism made.

*Disregarding Testimony.*

VI.   Appellant contends he was not afforded a fair and impartial trial.   There was ample testimony of eye witnesses tending to show that he was not on respondent's car at all at the time it was moved; that he was not injured by the car and that he simulated conditions of injury which did not in fact

Fair Trial.

exist.   This contention is based, in the main, upon questions put to appellant ·and ,offers of proof which are said to have prejudiced him with the jury.   The trial court consistently ruled with appellant upon his objections, and, at his request, excluded the jury when one question of evidence was being discussed.   Its exclusion was not asked at any other time.   The trial court was not requested to rebuke respondent's counsel for the conduct of which complaint is now made, nor did appellant request that the jury be discharged, but proceeded to verdict with his case.   No exceptions were taken on the ground now relied upon.   In these circumstances the contention cannot be sustained.

VII.   What has been said disposes of the questions presented under our rules (Simmons v. Affolter, 254 Mo. l. c. 174; Orchard v. Missouri Lumber & Mining Co., 184 S. W. l. c. 1139), and the judgment must be affirmed.   All concur except *Woodson, J.,* who dissents.