250 S.W.2d 350 (1952)
CONLEY
v.
KANEY.
No. 42764.
Supreme Court of Missouri, Division No. 1.
July 14, 1952.
*351 Clay C. Rogers, Lyman Field, Roger Tilbury, Rogers, Field & Gentry, Kansas City, for appellant.
William E. Kemp, Thomas J. Wheatley, Kansas City, for respondent. Kemp, Koontz, Clagett & Norquist, Kansas City, of counsel.
COIL, Commissioner.
Plaintiff-appellant purchased 744 steers and heifers from defendant-respondent, pursuant to an oral agreement. Plaintiff sought actual damages of approximately $20,000 and punitive damages in a like amount for an alleged loss he claimed to have sustained as a result of the averred fraud of defendant in misrepresenting the cattle. The jury found for defendant. Plaintiff appealed from the ensuing judgment. Two assignments of error are urged: one relating to the admission, and the other to the exclusion, of evidence.
*352 Plaintiff and defendant both were long experienced in the business of buying and selling livestock, particularly cattle. Briefly, the controversy evidenced by this litigation was this: plaintiff contended, and his evidence tended to show, that in July 1948 defendant agreed to and did sell to him approximately 775 steers and heifers to be delivered in October 1948; that plaintiff bought on defendant's representation that the cattle were and would be "choice" yearlings, sorted for quality, thin-fleshed, the heifers to weigh 500 to 525 and the steers 550 to 575 pounds each. Plaintiff agreed to and did pay $28.00 cwt. for the steers and $26.50 cwt. for the heifers. Seven hundred forty-four cattle were delivered, 354 steers and 390 heifers. Plaintiff claimed that none of the cattle had been sorted for quality; that they were not as represented in that some of the steers were not yearlings or were overweight, and that some of the heifers were not "choice" or yearlings, or were overweight.
Defendant made various contentions but we need mention only those involved in a disposition of the evidence questions here presented. Defendant denied making the representations charged by plaintiff. He said he was assisting Mrs. A. W. Adams, administratrix of the estate of her deceased husband, Alexander Adams, in disposing of the herd of cattle and other livestock located on a ranch or ranches operated by Alexander Adams during his lifetime at Maple Hill and Plains, Kansas. The cattle were known as the XI herd. Mrs. Adams had arranged to sell all the livestock on the XI ranch to a third party who, in turn, wished, through defendant, to sell the yearlings from the herd at a price of $28 cwt. for the steers and $26.50 cwt. for the heifers. Plaintiff asked defendant if he knew where he could buy yearlings for fall delivery. Defendant replied that the Adams XI yearling heifers and steers were for sale and that they were "an awful good bunch of yearlings." Plaintiff replied, "If they are XI cattle just buy them, they are good enough for me." Defendant bought the cattle for plaintiff in accordance with their oral agreement which, defendant claimed, was embodied in a written agreement which defendant prepared for execution by the third-party seller (Mr. Senter) and plaintiff, which agreement was executed by Mr. Senter but not by plaintiff. This writing failed to include any of the alleged representations other than that the cattle were to be yearlings in that they were to be "the yearlings" recently purchased by Mr. Senter from the Adams estate.
Defendant also contended that even if all the representations alleged by plaintiff to have been made were made, they were true.
This being a suit for fraud, the essential issues were whether the representations charged were made, whether they were false, whether material, whether, if made, defendant had knowledge of their falsity or was in ignorance of their truth, whether he made them intending that they should be acted on by plaintiff in the manner reasonably contemplated, whether plaintiff was ignorant of their falsity, his reliance on their truth, his right to rely thereon, and his consequent and proximate injury. Powers v. Shore, Mo.Sup., 248 S.W.2d 1, 5[2-4].
The trial court, over an objection by counsel for plaintiff, permitted nine witnesses to testify to the general good reputation of the XI herd for producing fine and choice cattle. We shall assume, without deciding, that plaintiff's objection was sufficient to preserve for review the question presented.
Plaintiff contends that the court erred in admitting this testimony for the reasons that: it was immaterial; the reputation of the herd was not confined to the neighborhood in which it was located; and the reputation of the herd had not been attacked. Plaintiff says that the issues dealt with specific yearlings, sold under specific representations, and that evidence of the general good reputation of the herd from which the specific yearlings came was not material or legally relevant.
It was plaintiff's contention that only a specified number of yearlings were to be sold and delivered in accordance with the oral arrangement with defendant; i. e., only those yearlings which, after having *353 been sorted for quality, met the specifications which plaintiff claimed were part of the agreement. Defendant, however, contended that plaintiff agreed to purchase and did purchase all the yearlings from the Alexander Adams XI herd except "unmerchantables." Defendant categorically denied that he made the representations charged by plaintiff to have been made, including the representation that the yearlings were all to be "choice." ("Choice" is a trade term descriptive of highest quality cattle.) Defendant, to support his contention that he did not make such a representation, testified in effect that he not only made no such representation but that, on the contrary, plaintiff, when he heard that the yearlings available were the XI yearlings, stated in effect that that fact was all he needed to know and instructed defendant to go ahead and arrange for the purchase of those cattle. Thus, testimony that the XI herd was one of the top herds of commercial cattle in the southwest and bore an excellant reputation as a producer of fine, choice cattle was corroborative of defendant's contention that plaintiff did say that "If they are XI cattle just buy them, they are good enough for me" which, in turn, was evidence in direct support of defendant's contention as to one of the essential issues, viz., that he did not make the representation charged. This testimony was, therefore, not only logically relevant, but was material to one of the essential issues in that it had a natural tendency to corroborate a fact proved by direct evidence or to increase the probability of an essentially relevant fact, viz., that defendant did not represent that all the yearlings would be choice. This testimony tended to add weight to defendant's testimony on one of the ultimate facts in issue. Luechtefeld v. Marglous, Mo. App., 151 S.W.2d 710, 714[5-7]; Chapman v. Metropolitan Life Ins. Co., Mo.App., 132 S.W.2d 1096, 1099[3]. See also: Atwood v. Joyce, 109 Vt. 30, 32, 33, 192 A. 11, 12; Davis v. Randall, 85 Vt. 70, 81 A. 250, 251. Certainly a jury would be more likely to find that plaintiff did say "If they are XI cattle just buy them, they are good enough for me", if there was evidence from which the jury could find that the herd from which the cattle came had a general, widespread reputation for producing fine commercial cattle; and, in turn, would be more likely to believe defendant's version of the arrangement and that defendant did not represent that all the cattle would be choice. True, plaintiff denied any knowledge of the XI herd or of its reputation. Plaintiff, however, had been engaged in buying and selling cattle in Kansas City, Missouri, for many years; the XI herd was located in Kansas; and defendant adduced other evidence from which the jury could find that plaintiff had knowledge of the reputation of the herd. Consequently, it was reasonable, under the circumstances, for the jury to conclude that the good reputation of the herd existed, that plaintiff knew of it, and that plaintiff wanted the cattle because they were XI yearlings, and thus conclude, as to the ultimate fact, that defendant did not make the alleged representation as to quality.
Furthermore, as noted, defendant contended alternatively or hypothetically that even if he represented that these yearlings were all to be choice, they were all in fact choice. The fact that a particular herd bears a general reputation for producing choice commercial cattle is some evidence, even though perhaps of only slight probative value, tending to show that the cattle sold were in fact choice.
It is true that the sole fact that evidence is logically relevant does not require its admission; the evidence must also have some probative force over and above logical relevancy which is usually referred to as "legal relevancy" or "materiality." McDonald v. Kansas City Gas Co., 332 Mo. 356, 369, 59 S.W.2d 37, 43[15][16]. If evidence pertaining to collateral matters brings into a case new controversial matters which would result in confusion of issues, constitute unfair surprise, or cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded. Jones v. Terminal R. R. Ass'n, Mo.Sup., 242 S.W.2d 473, 477 (2d col.).
The nine witnesses who testified as to the general reputation of the XI herd were not offered for the sole purpose of proving reputation. Each of the witnesses *354 save one had knowledge of and testified concerning the particular yearlings involved; and the other witness testified as to matters other than the reputation of the XI herd. The jury was instructed as to the issues involved. It does not appear that the admission of the questioned testimony confused the issues, caused undue prejudice, or constituted unfair surprise. Viewing the question of the admissibility of this testimony, even from a standpoint most favorable to plaintiff, and even assuming that it pertained to a collateral matter, we cannot say that it was not such as to aid the jury in drawing a logical inference with respect to one of the principal issues, viz., whether one of the representations charged was made. We think the determination of the admissibility of this evidence was a matter for the exercise of the sound discretion of the trial court, and we may not say that, under the circumstances, the exercise of that discretion was abused. 20 Am.Jur. § 247, pp. 240, 241; Counts v. Thompson, 359 Mo. 485, 499[5], 222 S.W.2d 487, 493[7,8]. This is particularly true in a case which involves fraud. A wide latitude in the scope of the evidence is proper. Reynolds v. Davis, 303 Mo. 418, 430, 260 S.W. 994, 996.
Plaintiff says that the general reputation was not confined to the neighborhood in which the herd was kept. Plaintiff had cited cases in support of this contention which establish the general rule that where the character of an individual is in issue, testimony as to his reputation must usually be confined to the community in which he lives and conducts his affairs. But even as to individuals, the ultimate test is the opportunity of those who testify to one's general reputation to have observed the general tenor of the way of life of the individual in question. County and state lines, as such, do not interfere with the spread of one's reputation. One may have a general reputation in more than one place. Ulrich v. Chicago, B. & Q. R. Co., 281 Mo. 697, 705, 220 S.W. 682, 684. Be that as it may, an entirely different problem is presented when the reputation of a herd of cattle is in question. There the reputation, the fact, to be established is whether the herd is generally recognized among cattlemen as one which produces choice, good, or inferior cattle. It seems apparent that it would not matter whether that reputation existed throughout the world or only locally, or whether those familiar with this reputation knew it as it existed only in the immediate locality of the herd or knew it as it existed in faraway places. The only question would appear to be whether the persons who testified had knowledge of the reputation to which they testified. No objection was made on the ground that, nor was any effort made by plaintiff on cross-examination to show that, the persons who testified, because they lived long distances away from the physical location of the herd, or for some other reason, did not or could not in fact have knowledge of the herd's reputation.
As to plaintiff's contention that the reputation of the herd had not been attacked and that, therefore, it was error to admit testimony as to its good reputation, suffice to say that this testimony was relevant and material as affirmative evidence bearing on a principal issue. It was not offered in the sense that evidence is offered to bolster the reputation of an individual whose reputation had not been attacked or was not in issue by the very nature of the case.
Plaintiff also contends that the court erred in excluding evidence offered in rebuttal that in the XI herd the bulls were permitted to run with the cows during the entire year. Plaintiff offered certain portions of a deposition of a witness which had been taken on behalf of defendant. The following questions and answers were offered to which the court sustained an objection:
"Q. From your inspection of them you would consider some of them long yearlings? A. Yes. I think in this particular ranch they keep the bulls with the cows the year-round and that makes the calf crop of different ages. There might be a difference of four or five months.
"Q. Did I understand you to say that it was general knowledge around that community that they had been leaving their bulls in the herd the year-round? *355 A. Yes, I think that is true. That is what I was told. * * *
"Q. What about the quality of the cattle? A. They were good cattle."
Plaintiff contends that the foregoing testimony was in rebuttal of testimony offered by defendant of the general reputation of the XI herd for producing quality cattle. The difficulty with plaintiff's contention is that this testimony, so far as this record shows, is not necessarily in rebuttal of the testimony as to the general good reputation of the XI herd. This testimony would tend to show that all the heifers and steers sold were not yearlings. In cross-examination of defendant's first witness, counsel for plaintiff inquired as to whether it was true that the bulls were permitted to run with the cows in the XI herd all year. The witness answered that it was not true. Thereafter, on direct examination of other defendant's witnesses, counsel inquired further as to this subject. Each witness who professed any knowledge denied that such was the practice on the XI ranch. The only testimony in the record, however, concerning the effect of permitting the bulls to run with the cows all year was that thereby the ages of the calves would vary greatly and consequently the so-called yearlings for any given season, that is, the calves of the year before, would not in fact all be yearlings, i. e., one, and less than two, years of age. One of the representations allegedly made by defendant was that the steers and heifers sold were yearlings. To prove the falsity of this representation, plaintiff could have offered proof, if he chose, as part of his case in chief or by cross-examination of defendant's witnesses, that on the XI ranch the bulls ran with the cows all year. If evidence of this fact were adduced, the jury could find from it that it was likely that the cattle in question were not all yearlings. But there was no evidence that any other than the result stated would occur by reason of this practice except perhaps the inconvenience and difficulty involved in attempting to raise cattle born in extremely cold weather. That is to say, there was no evidence that the practice of permitting bulls to run with cows all year would necessarily have anything to do with the general reputation of the herd for producing choice cattle or that the quality of the calves produced in such a herd would or would not be affected by the practice. In the absence of any such evidence, and in the absence of any further offer of proof in connection with the excerpts of the deposition offered tending to show that the practice would affect the reputation of the herd, we may not say that the trial court abused its discretion in excluding this testimony.
The judgment is affirmed.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by the COIL, C., is adopted as the opinion of the court.
All concur.