FERN McDONALD, by her next friend, SUSAN J. BABER, v. THE KANSAS CITY GAS COMPANY, a Corporation, and BAILEY-REYNOLDS CHANDELIER COMPANY, Appellants.—59 S. W. (2d) 37.

Division One, March 16, 1933.

*Charles H. Mayer* and *Charles M. Miller* for Kansas City Gas Company.

*Chas. M. Bush* for Bailey-Reynolds Chandelier Company.

*Clif Langsdale* and *Denton Dunn* for respondent.

HYDE, C.—This is an action for damages for the death of plaintiff's husband who was killed by an explosion which blew up the sidewalk, upon which he was walking, in front of a building occupied by the Bailey-Reynolds Chandelier Company, on Grand Avenue between Ninth and Tenth Streets, in Kansas City. Plaintiff alleged that it was an explosion of natural gas caused by the negligence of both defendants. She recovered a judgment of $10,000 against both defendants and both have appealed therefrom. It was plaintiff's theory, and her evidence tended to show, that the gas which exploded escaped from a break in the Gas Company's main, found thirteen feet south of the south line of the Chandelier Company's building; that this escaping gas followed the pipe line north through the ground until it crossed a tunnel under the street, through which steam pipes had formerly been brought into the Chandelier Company's building, and then came from the tunnel into the part of the basement under the sidewalk; that it was set off by sparks from an electric elevator when the janitor employed by the Chandelier Company opened that part of the basement; that the Chandelier Company, with knowledge that gas had been accumulating in this part of its basement for many weeks, made no investigation and did nothing to prevent it; and that the Gas Company likewise during this time made no inspection of its main when by the exercise of ordinary care it could have discovered the leak. The Chandelier Company attempted to show that it was not negligent but that the negligence of the Gas Company in failing to inspect and discover the break in its main was the sole cause of the explosion. It failed, however, to make a very satisfactory explanation of its failure to do anything about the gas accumulation, of which the evidence tends to show its officers knew. The Gas Company claimed that the explosion was not caused by gas escaping from a prior break in its main, but that the break in the main was caused by the explosion. It attempted to show that the gas which exploded was either sewer gas which came into the basement by reason of defective plumbing, or natural gas which escaped from the house pipes and other fixtures which were owned and controlled entirely by the Chandelier Company. This is the second case, for damages for a death caused by this explosion, which has been before this court. The first case was James v. Kansas City Gas Company and The Bailey-Reynolds Chandelier Co., 325 Mo. 1054, 30 S. W. (2d) 118. There will be found a detailed description of the premises and an account of what took place on the morning of the explosion. Since the evidence concerning these matters is substantially the same here, it will serve no useful purpose to repeat these details. Any different or additional facts and such facts as it may be necessary to again mention will be referred to hereafter in this opinion.

The Chandelier Company does not here contend that plaintiff

failed to make a case, of negligence for the jury, against it. It does, however, contend that the court had no jurisdiction to render a judgment against it because plaintiff's petition merely described it as the Bailey-Reynolds Chandelier Company and did not allege that it was a corporation. Plaintiff's original petition charging negligence in general terms was filed February 16, 1924, and summons was then issued to the Bailey-Reynolds Chandelier Company. The sheriff's return stated that he executed the writ on February 18, 1924, "by delivering a copy of this writ to J. S. Bailey, president and chief officer of the within named defendant corporation the Bailey-Reynolds Chandelier Co." Thereafter, on March 24, 1924, the Chandelier Company in its corporate name filed a separate demurrer to plaintiff's petition on the ground that it did not state facts sufficient to constitute a cause of action. On April 3, 1926, plaintiff filed an amended petition making specific allegations of negligence. Thereafter, on May 10, 1926, the Chandelier Company filed, likewise, in its corporate name for its separate answer, a general denial. On December 20, 1928, a stipulation was entered into by the attorney for the Chandelier Company with the attorney for the Gas Company and the attorney for plaintiff that the deposition of a witness taken in the James case and the testimony of another witness (both were plaintiff's witnesses) given at the trial of the James case against both of these defendants might be read in evidence at the trial of this case against both defendants. On the day the case was called for trial, May 6, 1929, the Chandelier Company asked leave to withdraw its answer and, when leave was granted, it filed a demurrer upon the ground "that there is a defect of parties defendant as to this defendant in this, that there is no allegation of fact stated in plaintiff's first amended petition on which to base a judgment against any legal entity or person." Evidence was introduced showing that the Chandelier Company was a corporation and this was not denied. The demurrer was overruled and the cause went to trial on plaintiff's petition without amendment. The Chandelier Company set up in its amended answer, the ground stated in its demurrer, in addition to its general denial.

While it may be that the Chandelier Company could have raised this question in the first instance, we hold that it waived it, during the period of more than five years between the filing of the suit and the trial, by filing a general demurrer to the petition, filing an answer to the merits and entering into a stipulation regarding the use of former evidence in the trial of the James case, all of which it did in its corporate name in which it was sued. This stipulation settled the identity of this defendant because the James case, referred to therein, resulted in a judgment against this same defendant corporation which this court has affirmed. We hold this defendant corporation

362

made a general entry of appearance which gave the court jurisdiction of it. [As to what constitutes general entry of appearance see 14a C. J. 813, sec. 2923; 14a C. J. 831, sec. 2945; see, also, Sec. 965, R. S. 1929; Hudson v. St. Louis, Kansas City & Northern Ry. Co., 53 Mo. 525; Whitthouse v. Atlantic & Pacific Ry. Co., 64 Mo. 526; Flynn v. City of Neosho, 114 Mo. 567, 21 S. W. 903; Gray v. Grand River Coal & Coke Co., 175 Mo. App. 421, 162 S. W. 277; Newcombe v. N. Y. Cent. & Hudson River Railroad Co., 182 Mo. 687, 81 S. W. 1069; Thomasson v. Mercantile Town Mutual Ins. Co., 217 Mo. 485, 116 S. W. 1092; State ex rel. Pacific Mutual Life Ins. Co. v. Grimm, 239 Mo. 135, 143 S. W. 483; Joe Dan Market v. Wentz, 321 Mo. 943, 13 S. W. (2d) 641; Clark v. Grand Lodge of Brotherhood of Railroad Trainmen, 328 Mo. 1084, 43 S. W. (2d) 404.] It is also said: "According to the prevailing view, in an action against a corporation, if it is sued by its corporate name, the fact that the defendant is a corporation need not be expressly alleged," at least where its name imports a corporation. [7 R. C. L. 697 to 700, secs. 700 to 703; 14a C. J. 815 to 818, secs. 2928-2929; Ann. Cas. 1913C, 339.] There are cases to the contrary (see above authorities) but it is at least a matter which can be waived by general appearance.

The Chandelier Company also complains of the admission of certain testimony of the Gas Company's witnesses to the effect that the gas main was gas tight before the break; that sewer gas is explosive, and that there have been explosions in sewers; that such explosive gases have increased in sewers since the use of automobiles; that the break in the gas main looked like a fresh break; that smoke and steam from the building interfered with taking pictures on behalf of the Gas Company; that the charts made by the recording instruments in the Gas Company's office showed certain movements of the recording needle which it was claimed indicated the breaking of the gas main by the explosion; that if natural gas sufficient to cause an explosion had been in the basement, the explosion would have taken place at the first movement of the elevator instead of about two hours later; and that certain acids used by the Chandelier Company in its business, which were drained out through its sewer pipes, would eat out the pipes leading to the city sewer and leave an opening for sewer gas to get into the basement. The Chandelier Company's contention about this testimony is that the witnesses' answers were merely conclusions, and that it injected false issues into the case. Even if that were true it would not be ground for reversal of plaintiff's judgment. These matters all went to sustain the Gas Company's defense that no natural gas got into the basement from its main. Both plaintiff and the Chandelier Company claimed that it did. The jury was not authorized to find a verdict against either defendant unless it found that the explosion was

caused by natural gas which had escaped from the Gas Company's main and, since it returned a verdict against both, it so found. If it was error at all it was error in favor of the Chandelier Company's codefendant and, especially since the jury found a verdict against this codefendant, it cannot complain. It is only when incompetent evidence introduced by a codefendant affects the question of the other defendant's liability to plaintiff that there can be any error prejudicial to such other defendant. [Homan v. Mo. Pac. Railroad Co., No. 30118, April Term, 1932, not yet published; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559, and cases therein cited.]

The same thing is true of the Chandelier Company's contention that the court erred in excluding evidence offered by it to show that natural gas accumulated in the basement of the building west of its building. The trial court excluded it because there was no evidence to show that it was possible for gas to get into the other building from the Gas Company's main. It is said that the purpose of offering this evidence was to show that natural gas in the other building was exposed to an open flame and did not explode and therefore bear out the contention of the Chandelier Company that natural gas would not explode until mixed in the right proportion with air. This, however, was for the purpose of showing that natural gas and not sewer gas caused the explosion and the jury so found because it found against the Gas Company. Therefore, the Chandelier Company could not have been prejudiced by its exclusion.

The Chandelier Company complains further of plaintiff's main instruction authorizing a verdict against it, which was as follows:

"The court instructs the jury that if you find and believe from the evidence that the defendant The Bailey-Reynolds Chandelier Company, occupied the building mentioned in the evidence and the basement under said building, and that it occupied, used and controlled that portion of said basement under the sidewalk mentioned in the evidence, and if you further find that on the 2nd day of February, 1924, *natural gas was accumulated in the said basement in explosive quantities*, if so, and *that said gas had escaped from the gas main* laid under the surface of the street on the east side of Grand Avenue, between 9th and 10th Streets, mentioned in the evidence, in Kansas City, Missouri, from a break, if any, in said main, about thirteen feet south of the south property line of the said building, if so, and if you further believe from the evidence *that said gas so accumulated and did on said date, explode* and blow up the public sidewalk in front of the said building mentioned in the evidence, and if you further find that at the time of said explosion, plaintiff's husband, Donald McDonald, was on said sidewalk, and received injuries from said explosion, if so, which caused his death on said date,

if so, and if you further find from the evidence *that natural gas escaping from said break,* if any, *had been accumulating in said basement for some time* prior to the said 2nd day of February, 1924, *and that the defendant,* The Bailey-Reynolds Chandelier Company, *knew, or by the exercise of ordinary care would have known, of the said accumulation,* if any, in said basement, and *in time to have thereafter by the exercise of ordinary care, prevented the accumulation of said gas,* if any, in said basement, on the said 2nd day of February, 1924, *which* said accumulation of gas, if any, *caused the said explosion,* if so, and if you further find that said defendant, The Bailey-Reynolds Chandelier Company, *negligently failed so to do,* and that the said negligence, if any, caused the death of the said Donald McDonald, if so, then your verdict will be for the plaintiff, and against the defendant The 'Bailey-Reynolds Chandelier Company.'' [Our italics.]

Its criticism of this instruction is that it fails to require the jury to find that the Chandelier Company ''could, by exercising ordinary care have known or ascertained that natural gas which was escaping into said basement might or would while so in said basement be caused to explode . . . in time thereafter to have stopped the same and prevented the explosion.'' It contends, therefore, that the instruction left out ''essential elements of negligence necessary to plaintiff's right of recovery.'' It is, of course, true, as the Chandelier Company contends, that an instruction, purporting to cover the whole case and authorize a verdict, is erroneous if it leaves out any facts, necessary to be found before the plaintiff is entitled to recover, and that, where an instruction does leave out such an essential fact, the error is not cured by an instruction for defendant requiring a finding of such a fact before recovery can be had against it. This is because the two instructions would be conflicting, since the plaintiff's instruction would authorize a verdict for the plaintiff without finding such vital fact, while the defendants' instruction would inform the jury that they could not find a verdict for the plaintiff without finding such a vital fact. [Macklin v. Fogel Construction Co., 326 Mo. 38, 31 S. W. (2d) 14; State ex rel. Security Ins. Co. v. Trimble, 316 Mo 26, 318 Mo. 173, 300 S. W. 812; State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984; Hall v. Manufacturers' Coal & Coke Co., 260 Mo. 351, 168 S. W. 927; Mojtylak v. Coal Co., 188 Mo. 260, 87 S. W. 506.] ■ However, it has long been settled that instructions must be read and construed together and ''that, where a series of instructions taken together contains a complete exposition of the law and covers every phase of the case, the verdict rendered thereon will be sustained, even though the instructions when taken separately may be incomplete and open to objection and criticism.'' [Hughes v. C. & A. Ry. Co., 127 Mo. 447, l. c. 452, 30 S. W. 127; Owens v.

K. C. St. J. & C. B. Ry. Co., 95 Mo. 169, 8 S. W. 350; State ex rel. Jenkins v. Trimble, 291 Mo. 227, 236 S. W. 651; Krelitz v. Calcatona, 33 S. W. (2d) 909; Neal v. Caldwell, 34 S. W. (2d) 104; Acker v. Koopman, 50 S. W. (2d) 100.]  ■  Therefore, if the plaintiff's instruction, covering the whole case and authorizing a verdict, does require the finding of all essential elements of the plaintiff's case, but states some of these indefinitely or ambiguously or in language which might be misleading, then an instruction on the part of the defendants which clearly and specifically requires the finding of essential elements does not conflict with the plaintiff's instruction, but instead makes it clear and definite. When all of the instructions thus harmonize and when read together correctly state the law any such indefinite, ambiguous or misleading language in the plaintiff's instruction is cured by the other instructions. [Smith v. Southern Ill. & Mo. Bridge Co., 326 Mo. 109, 30 S. W. (2d) 1077; Schultz v. Schultz, 316 Mo. 728, 293 S. W. 105; Jablonowski v. Modern Cap. Mfg. Co., 312 Mo. 173, 279 S. W. 89; Emory v. Emory, 53 S. W. (2d) 908.]

■  We do not think this instruction is so defective as to constitute reversible error. It commences by requiring the jury to find that on the day of the explosion "natural gas was accumulated in said basement in explosive quantities" and that it "did on said date explode." It further required the jury to find that the gas came from the break in the Gas Company's main and that "natural gas escaping from said break . . . had been accumulating in said basement for some time prior." It ended by requiring them to find that the Chandelier Company, "knew or by the exercise of ordinary care could have known of said accumulation . . . in time to have thereafter, by the exercise of ordinary care, prevented the accumulation of said gas which . . . caused the said explosion" and that it negligently failed to do so. Since this instruction required the finding that gas was accumulated in explosive quantities and that the Chandelier Company knew or by the exercise of ordinary care could have known of and prevented said accumulation (in explosive quantities) which caused the explosion and negligently failed to do so, we do not think the jury would fail to understand that, in order to find negligence and render a verdict against the Chandelier Company, it must find that "this defendant could have known that the natural gas escaping into its basement was likely to explode," to-wit: that it was accumulating or was likely to accumulate in explosive quantities. It, in fact, seems inconceivable that anyone, knowing that natural gas was escaping every night into a closed basement and was accumulating there, would not know "that there was danger of its exploding." [See 33 C. J. 144, sec. 1966; 15 R. C. L. 1098, sec. 31.] We think the most that could be said is that this instruction was

merely somewhat indefinite or that it could more clearly state essential requirements, and that it would come within the rule above referred to and be made plain by defendants' Instruction 21, as follows:

"You are instructed that even though you may find and believe from the evidence that natural gas had been escaping from the gas main in front of the building in question before said explosion, and that said natural gas (if any) had accumulated in said basement and areaway on different occasions before said explosion (if you so find), yet if you further believe from the evidence that said natural gas so accumulated in said basement and areaway (if you find there was natural gas in said basement and areaway and that it did so accumulate), was of such a nature that the defendant Bailey-Reynolds Chandelier Company, while exercising ordinary care, could not distinguish said natural gas (if any) from ordinary basement odors, and could not by exercising ordinary care have known that natural gas was present in said basement and *that there was danger of its exploding* (if you so find), then your verdict must be in favor of the defendant Bailey-Reynolds Chandelier Company." [Italics ours.]

█ The Chandelier Company also contends that it was error to refuse its Instruction M, which was as follows:

"The jury is instructed that the burden of proof rests upon the plaintiff in this case to make out a cause of action and this must be sustained by a preponderance, that is, the greater weight, of the credible evidence. If the credible evidence on such issues is evenly balanced or preponderates in favor of the defendant, Bailey-Reynolds Chandelier Company, your verdict must be for that defendant."

The last sentence of the instruction is not clear, in saying "evidence on such issues," what issues are meant. The court gave three instructions, Numbers 15, 16 and 19, telling the jury that the burden of proof was upon the plaintiff; that she must prove her case and charge of negligence by preponderance of the evidence, and defining this term; and that they were the judges of the weight of the evidence and the credibility of the witnesses. It was unnecessary to give four instructions on the burden of proof.

█ The final contention of the Chandelier Company is that the court erred in refusing to give its Instruction M withdrawing the issue of a defective drain, sewer trap and house trap. This was not error because the same matter was covered by Instructions 18 and 25 of the Chandelier Company which the court gave so that it had all that it could reasonably ask on the proposition.

The Gas Company says that its demurrers to the evidence should have been sustained but frankly says that "the evidence in the case at bar is in all essential respects, substantially the same as in the case of James v. Kansas City Gas Company, supra. We adhere to the

ruling in the James case and hold that the demurrers were properly overruled.

The Gas Company makes the further contention that the court erred in admitting testimony concerning low gas pressure in the Federal Reserve Bank Building. Plaintiff called as a witness Mrs. Divilbiss, a pastry cook in a restaurant on the 19th floor of the Bank Building, who testified that she had worked there as a pastry cook about two years before the explosion; that for about four weeks before the explosion the supply of gas was poor; that the burners of the gas stove and oven which she used burned with a red flame; that she could not get sufficient heat to properly cook her pastry; that she could not get pies brown and flakey, but could only get them "about half cooked;" that during that time a plumber found a minor leak in the stove, made some adjustments on the burners, but that it did not make any difference in the heat; and that also two men from the Gas Company came about a week before the explosion and tried to make adjustments on the stove but did not do any good. She further testified that after the explosion when the gas was turned on that the supply was fine and she never had any further trouble. This evidence was introduced over the objections of the Gas Company and an instruction withdrawing it from the consideration of the jury was refused. The Gas Company contends that this was reversible error.

In the James Case, the same contention was made about the evidence of Mrs. Divilbiss who was called there as a witness by the Chandelier Company. This court, there (325 Mo. l. c. 1069, 30 S. W. (2d) 118), disposed of the Gas Company's contention as follows:

"A pastry cook employed there, called as a witness by the Chandelier Company, testified over the Gas Company's objection that the burners on the gas range in the cafe, for a period of from four to five weeks before the explosion, gave off a red flame, 'like it had air in it,' from which she drew the conclusion that the gas pressure was weak. We agree with counsel that the evidence did not prove or tend to prove any issue in the case; it was without any probative value whatever on the issue as to whether the gas main was broken before, or at the time of, the explosion. Before the reception of the testimony complained of, it had been very thoroughly demonstrated by the evidence that, owing to the devices known as the governors, the breaking of the main could not have affected the pressure, except momentarily—that was accepted as an established fact by all the parties. The error was harmless."

It will be noted that in the James case the testimony of Mrs. Divilbiss was apparently limited to a conclusion that the gas pressure was weak because it burned with a red flame like it had air in it. In the present case the testimony apparently went much farther and

showed a diminished supply of gas which was insufficient to properly heat the oven before the explosion; that repairs and adjustments were made on the stove but did not remedy the condition; and that after the explosion the gas supply was sufficient. It was also shown by a plumber called by the Gas Company that before the explosion he went "to the kitchen in response to a direction based on low pressure;" that new valves were put on the stove for the purpose of correcting the condition; that after the explosion before turning on the gas in the Bank Building he found a small leak in one of the gas pipes inside the building; that this leak probably amounted to about two cubic feet per hour; and that the stove used about eight cubic feet per hour. Furthermore, the plaintiff in this case did not accept as an established fact that the devices of the Gas Company known as "governors" worked so well that "the breaking of the main could not have affected the pressure, except momentarily." Before offering the evidence of Mrs. Divilbiss, plaintiff introduced evidence to show that the nearest governors were located a considerable distance from the broken main; that this main ended in front of the Federal Reserve Bank Building only a few feet from the break; that the main had a maximum capacity of about 1000 cubic feet per hour; and that about 400 to 500 cubic feet per hour would go out through the break. It is at least a reasonable inference from the plaintiff's evidence that the governors would be least effective in overcoming a break at the extreme end of a main far from them and and also that the question of how completely they would overcome it at the extreme end of such a line "would depend upon how much gas would go out through the break." One witness for the Gas Company also said that it would depend on the size of the break and that the complete break would probably cut the pressure some. The Gas Company's evidence showed that practically the whole city was furnished gas from a single system. This consisted of high pressure mains from which gas was allowed to pass into the distribution mains by the governors which automatically opened and closed valves, as the gas in the distribution system was used, so as to maintain a constant pressure therein. These governors were located at several places throughout the city about a mile apart. The broken main in question was not only a considerable distance from any of these governors but also was a small main which ran off from a larger one into which the governors allowed gas to flow. According to the evidence of the Gas Company's engineer the customary flow of gas through it was about 500 feet per hour and "there was a break there big enough to let out 150 feet per hour."

One argument of the Gas Company was as follows:

"That after the explosion and before the gas was turned on in the Federal Reserve Bank Building, one of the large risers had to

be cut off, owing to a leak some place in the house piping. If there was any trouble, such as disclosed by Mrs. Divilbiss, it was due to the conditions we have heretofore set forth as disclosed by the evidence as to a leak in the house piping." (The condition of the stove and installation of gas in offices of doctors and dentists is also suggested.)

If the governors would supply enough more gas so that a complete break, of the main in the street, would not affect the supply of gas beyond it, it is difficult to understand why these governors would not overcome a small leak in one of the pipes inside the building. At least, it would be a question for the jury whether these circumstances tend more to support the position of the plaintiff that the governors would not fully overcome the effect of the break close to the end, of the line, or to support the Gas Company's contention that they would completely overcome a leak anywhere in the system.

"An event may be evidenced circumstantially by a cause or by an effect." [1 Wigmore on Evidence, 769, sec. 436; see, also, Wigmore's Principles of Judicial Proof, Chapter XVII.]

"The practical conditions under which cases are tried do not always permit the court to hear all facts which may be in any degree logically relevant to the issue, but requires that the facts received shall have a somewhat higher degree or probative force, which may be termed 'legal relevancy' or 'materiality.' The rule in this connection is that whenever the court feels that a fact is not of probative value commensurate with the time required for its use as evidence, either because too remote in time, or too uncertain or too conjectural in its nature, the fact may in the exercise of a sound discretion be rejected." [22 C. J. sec. 90, 162-164; see, also, 10 R. C. L. 925-927, secs. 87-90; 1 Wigmore on Evidence, 231-236, secs. 27-29.]

"The required probative value, on the other hand, is far lower than full proof, because the judge merely puts upon the material its ticket of admission as relevant, and leaves the weight, or final persuasive effect, for the jury to determine." [1 Wigmore on Evidence, 235, sec. 29.]

We hold that under the circumstances shown in this case, which were not shown in the James case, the evidence of Mrs. Divilbiss was of sufficient probative value to be admissible. How much weight should be given it as tending to show when the break in the main occurred was, of course, for the jury after they had considered the evidence of the Gas Company concerning the workings and the efficiency of its governors and other instruments.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.