Nicholas A. PAPPAS, Plaintiff-Appellant,

v.

Fred PIEPER, Defendant-Respondent.

No. 46820.

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

Gragg, Aubuchon & Walsh, Hocker, Goodwin & MacGreevy, John M. Goodwin and Donald J. Stohr, St. Louis, for appellant.

Lackland H. Bloom, St. Louis, for respondent.

HYDE, Presiding Judge.

Action for $25,000 damages for personal injuries sustained in the crash of an airplane, in which plaintiff was riding, piloted by defendant. Verdict and judgment were for defendant and plaintiff appealed.

Plaintiff makes only two assignments of error, the first for receiving in evidence a regulation of the Civil Aeronautics Administration and the second for giving Instruction 7. Defendant contends plaintiff was guilty of contributory negligence as a matter of law in interfering with defendant's operation of the plane; and also claims it was proper to admit the regulation and to give Instruction 7.

Plaintiff went with defendant and two other men for a ride in defendant's Cessna 170B airplane on January 15, 1956. Defendant had a private pilot's license obtained in February, 1955, and had about 50 hours solo flight time with this plane. Plaintiff got his private pilot's license about 1947 and had about 500 flying hours but no instruction and very little experience with the Cessna 170B. January 15, 1956, was a cold, gusty day with winds at 20 to 25 miles per hour with gusts up to 30 miles per hour. Defendant had never before operated the plane with quite so much wind. Defendant as pilot was in the left front seat and plaintiff sat in the right front seat; the other men were in the rear seats. Coming in to land, from their flight, defendant went twice around the field and on the third approach touched the ground but when the plane hit a rough spot and bounced, plaintiff said defendant then "jammed the throttle full forward and came back on the wheel," causing the plane to go up again in a steep climb with the nose high. The stall warning signal (which would sound when the plane was going only about 5 to 10 miles per hour above stall speed) started blowing. To prevent a stall, it was necessary to get the nose of the plane down and gain speed. There was a sharp conflict in the testimony of the parties as to what happened thereafter to cause the plane to fall and crash.

The Cessna 170B was equipped with Fowler type flaps which when retracted reduced wing area. (There was more wing area with the flaps down than up.) The flaps had three different settings, the first two settings were primarily to produce lift and the third setting to produce drag. The plane had dual controls but the flap handle and the throttle were in the center and could be reached from either front seat. In landing, according to plaintiff, defendant had the flaps down one notch. Plaintiff said, as the plane approached the edge of the runway, defendant suddenly "dumped the flaps all the way to the bottom" which plaintiff thought was improper as tending to increase lift and cause the nose to come up. (Plaintiff said defendant had made improper approaches on the first two times over the field, drifting away and missing the runway, and that he had been giving defendant suggestions about landing.) When the plane rose and the stall warning

sounded, plaintiff told defendant he should get the nose down. Plaintiff said defendant started to raise the flaps and he reached down and stopped him. Plaintiff said raising the flaps at the altitude then attained (he said it was from 25 to 50 feet) would have caused the plane "to sink into the ground." Plaintiff said, when the plane got to about 100 to 125 feet, defendant started to turn to the right. Plaintiff said he started screaming "don't turn" because "the speed of the airplane was not such that a turn could be successfully completed." Plaintiff then grabbed the wheel to keep defendant from turning. Plaintiff said he could not overcome defendant's control and the plane fell. It was also plaintiff's claim that defendant should not have taken the plane off the ground again after it bounced on the runway. Plaintiff had expert testimony that taking off one notch would lose lift immediately; that it would be unsafe to "bleed off" the third notch at 50 feet; and that he "wouldn't take off full flaps until about 500 feet." He said "bleeding" meant "gradually just ease the flaps off very easily."

Plaintiff's theory, submitted in his Instruction 6, was as follows: "The airplane mentioned in evidence was landed by defendant with full or 30° flaps and that defendant then attempted to take off the aircraft with the flaps still extended in this position and that after the airplane was in the air defendant failed to hold the nose of the airplane down in such position as to permit the plane to gain flying speed, but held or permitted said nose to be in a high or steep climbing angle so as to prevent the airplane from gaining a safe speed so as to retract the flaps and proceed in normal flight;" and that "in so doing defendant was not exercising ordinary care" and that this was negligence which caused the plane to stall and fall.

Defendant's evidence was that on all three times around the field plaintiff kept giving him instructions on how to fly the plane, which he tried to follow although they bothered him; and that in landing he moved the flaps to third position at plaintiff's suggestion. Defendant said he made a good landing but that plaintiff grabbed for the throttle when the plane bounced and, thinking that plaintiff saw something he did not see, he pushed the throttle to go up and around again. Using full throttle with full flaps caused the nose of the airplane to rise in a steep climb. Defendant was not able to get the nose down because of the full flaps and the back pressure on the wheel. In order to enable him to get the back pressure off and to lower the nose, defendant started to "bleed off" one notch of flaps, which he said would get the nose down and permit the plane to gain speed. He did not intend to take off all the flaps, but to ease them from the third to the second position. When he reached for the flap handle the airplane was over 100 feet high. At that time plaintiff knocked defendant's hand away and said: "Leave it alone." The airplane then continued to climb, nose high, to between 200 and 250 feet when plaintiff grabbed the controls. When defendant saw that plaintiff grabbed the controls, he asked him if he had it and plaintiff said "yes." Both of the passengers in the rear seats said they heard plaintiff say "I've got it" before the plane turned. Plaintiff then made a half turn on the wheel and the plane lost 100 feet, "went to mushing," and then stalled and dropped. Defendant said it was only a minute after plaintiff knocked his hand from the flap handle that plaintiff grabbed the wheel. Defendant said he never undertook to turn the airplane and knew it would result in a stall if it was turned with the nose high. Defendant had expert testimony to the effect that the flaps properly and safely could be changed from the third to second position as low as five feet off the ground; that the second notch could be taken off as low as fifteen feet above the ground; that taking off the third notch of flaps "reduces drag considerably and gives it an opportunity to regain complete flying speed;" that 500 feet of altitude could not be gained with a Cessna 170B carrying four people, full throttle and

full flaps, in less than 15 or 20 miles; and that in the situation shown it was absolutely necessary to get off that third notch of flaps.

Defendant's theory was submitted in Instruction 7, which was as follows:

"Instruction No. 7. The Court further instructs you that if you find and believe from the evidence that during the flight mentioned in evidence, that the defendant was the Pilot in Command of the Cessna 170B Aircraft being flown on the occasion mentioned in evidence; and if you find that after landing said aircraft on the occasion mentioned in evidence that the defendant applied full throttle to execute a go around; and if you find that immediately thereafter said aircraft was in a nose high attitude and that the airspeed thereof was near a stall; and if you find that the defendant undertook to decrease the amount of flaps on said aircraft from the third to the second notch so as to enable him to lower the nose of said aircraft and increase the airspeed; and if you find that such procedure was such that an ordinary prudent pilot would have done under the same or similar circumstances; and if you find that the plaintiff, while a guest and a passenger in said aircraft, prevented the defendant from reducing the flaps thereof and undertook to operate said aircraft; and if you find and believe that such action on the part of the plaintiff was negligence, as defined in the other instructions given you by the court; and if you find and believe that such negligence, if any, directly caused or contributed to cause the accident, then you are instructed that plaintiff is not entitled to recover, and your verdict must be for the defendant, and this is true even though you may find defendant was negligent under other instructions of the Court."

Instruction 1 defined "ordinary care" as "that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances"; and stated: "Any failure to exercise such degree of care would constitute 'negligence'."

■ The regulation objected to was Sec. 20.80, as follows: "Pilot in command shall be the pilot responsible for the operation and safety of the aircraft during the time defined as flight time." Plaintiff says that this regulation was wholly irrelevant and immaterial; that its admission had a tendency to draw the jury's attention away from the issues it was called upon to resolve; and that it implied plaintiff was precluded from recovery per se if he interfered with defendant as the pilot in command. Plaintiff also cites Sections 305.040 and 305.050 RSMo 1949, V.A.M.S. providing that tort law of this state, applicable to torts on land, shall govern liability for torts in flight or for collision on land or in the air, citing as applying this rule Hough v. Rapidair, Inc., Mo.Sup., 298 S.W. 2d 378, and Linam v. Murphy, 360 Mo. 1140, 232 S.W.2d 937. On his contention that this regulation was inadmissible, because claimed to be without probative value, plaintiff cites Conley v. Kaney, Mo.Sup., 250 S.W.2d 350; Jones v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 242 S.W.2d 473; Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 157 A.L.R. 598; McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37. However, in the Hough case, 298 S.W.2d loc. cit. 383 we said: "We see no reason that the trial court in its discretion should not permit pertinent rules to be read in evidence," referring to rules promulgated by the Civil Aeronautics Board. We also noted therein that Sec. 305.070, RSMo 1949, V.A.M.S., provided that the other sections of our Uniform Aeronautics Act should be interpreted "so as to harmonize the law of this state, as far as possible, with Federal laws and regulations on the subject of aeronautics." We think Regulation 20.80 was pertinent to the issue of contributory negligence in this case because it was relevant to the issue of who should have operated the plane under the circumstances shown; and it did not

purport to make any interference negligence per se, as plaintiff contends, under any or all circumstances. It was an issue for the jury to decide what interference under any circumstances shown would be contributory negligence and we think this was made clear by the instructions. (As to tort rules concerning interference with automobile drivers, see A.L.I. Restatement of Torts, Sec. 495, Comment f; 5A Am.Jur. 749, Sec. 801; 61 C.J.S. Motor Vehicles, § 486, p. 94.) We hold there was no error in admitting this regulation.

■ Plaintiff's claims of error in Instruction 7 are: (1) that it failed to require a finding that the plaintiff knew or in the exercise of ordinary care could have known that his action in preventing the defendant from releasing all the flaps of the plane was not reasonably safe; and (2) that the requirement of finding that defendant was "pilot in command" was irrelevant and misleading and was positive misdirection because it implied that his interference was contributory negligence per se. As to the latter, what we have said concerning admission of Regulation 20.80 disposes of it. We also note that, as to the provisions of this regulation, Instruction 7 required nothing more than a finding that defendant was the pilot in command which hardly amounted to more than a requirement in a motor vehicle case that the defendant was the operator of the vehicle. Furthermore, in connection with both these contentions, we note that Instruction 8, given at plaintiff's request, stated, if jury found "that while plaintiff was a passenger in the airplane mentioned in evidence said airplane was taking off with the flaps fully extended and with the nose of the aircraft held in such a steep climb that the stall warning indicator was sounding and that said airplane was stalled or nearly stalled and was mushing forward and in danger of stalling and crashing to the ground, and at that time plaintiff was confronted with a sudden emergency with no time to deliberate;" then they were instructed "plaintiff was only required to exercise that degree of care which an ordinary prudent person would exercise under the same or similar circumstances when confronted with such a sudden emergency and with no time to deliberate, and if he did exercise such care prior thereto and did attempt to right the airplane and prevent it from stalling and crashing while exercising the aforementioned degree of care;" then he must not be found negligent.

On his first claim of error, plaintiff cites Jones v. Kansas City, Mo.Sup., 243 S.W.2d 318, and Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844. These were both cases of physical condition of premises concerning the type of contributory negligence which depends on the plaintiff's intentional and unreasonable exposure of himself to danger of which he knows or has reason to know. (A.L.I. Restatement of Torts, Sec. 466(a), Comment c.) As stated in Comment c, in that type of contributory negligence, "the plaintiff must know of the physical condition created by the defendant's negligence and must have knowledge of such facts that, as a reasonable man, he should realize the danger involved." That is not the type of contributory negligence involved in this case. Instead this case involves the type of contributory negligence described in Sec. 466(b) of the Restatement, namely, "conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reasonable man should conform in order to protect himself from harm." As stated in Comment f this type of contributory negligence "is conduct on the part of the plaintiff which is substantially similar to that conduct on the part of the defendant which is dealt with as negligence (see Secs. 281–328) when his liability to a third person is in question. * * * However, contributory negligence of this type differs from the negligence of the defendant in that the standard of behavior to which the plaintiff is required to conform is that to which a reasonable man would think it

necessary to conform for his own protection rather than for the protection of others." The Restatement's definition of negligence (Sec. 282) is conduct "which falls below the standard established by law for the protection of others against unreasonable risk of harm." The standard referred to "is that of a reasonable man under like circumstances." (Sec. 283.) The question in this case, on contributory negligence, is whether plaintiff's conduct was that of a reasonable man under the circumstances shown.

■ Instruction 7 in effect required finding that plaintiff prevented defendant from taking the procedure of decreasing flaps "that an ordinary prudent pilot would have done under the same or similar circumstances" and also undertook to operate the plane, which defendant was piloting, under the circumstances hypothesized therein. It further required finding that "such action on the part of the plaintiff was negligence" which "directly caused or contributed to cause the accident." Considering the definitions given by Instruction 1 and the "sudden emergency" submitted by Instruction 8, we think plaintiff had a favorable submission. Plaintiff says he might have been negligent if he had not taken such action, citing Grimm v. Gargis, Mo.Sup., 303 S.W.2d 43, in which we overruled the contention that the passenger in the plane was guilty of contributory negligence as a matter of law in making no protest to a short field take-off resulting in a crash under somewhat similar circumstances, a stall at an altitude of 75 to 150 feet due to a climb that was too steep for the speed attained. (It is interesting to note that the evidence in that case was: "As the plane approached a stall the proper procedure was to reduce the amount of flap used, thus lowering the nose of the plane and permitting it to gain speed before again continuing the climb.") In this case, likewise, we overrule defendant's contention that plaintiff was guilty of contributory negligence as a matter of law; but we

hold that this issue was for the jury and that it was not erroneously submitted.

The judgment is affirmed.

All concur.