James BLEDSOE, Plaintiff-Appellant,

v.

NORTHSIDE SUPPLY & DEVELOPMENT COMPANY, a Corporation, Defendant-Respondent.

No. 52917.

Supreme Court of Missouri, Division No. 2.

July 8, 1968.

Barnett, Montgomery, McClintock & Cunningham, Ross R. Barnett, Jackson, Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Warren S. Stafford, Springfield, for plaintiff-appellant.

Karl F. Schmidt, Robert M. Kroenert, John E. Besser, Kansas City, for respondent, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, of counsel.

LAURANCE M. HYDE, Special Commissioner.

Action for $100,000.00 damages for personal injuries sustained when an airplane plaintiff was operating fell at Alexandria, Louisiana. Verdict and judgment was for defendant and plaintiff has appealed. Plaintiff claims the cause of the plane crash was defective spark plugs.

Plaintiff alleges error in giving Instruction No. 3 submitting contributory negligence and in admitting certain testimony of defendant's expert witness H. A. Hindert. Defendant claims it was entitled to a directed verdict at the close of all the evidence saying plaintiff failed to prove defendant owned the airplane involved and also that plaintiff was guilty of contributory negligence as a matter of law. Our view is that plaintiff made a jury case and that Instruction 3 was prejudicially erroneous.

The evidence of defendant's ownership was a contract for the purchase of a Piper Airplane, 7752P, signed "Northside Supply and Dev. Co. by Paul O. Johnson, Pres.," dated March 16, 1964; and the following documents certified by the Supervisory Conveyances Examiner, Public Documents Section, Federal Aviation Agency, Oklahoma City, Oklahoma, as true copies of the original aircraft records pertaining to Piper PA–24–180 aircraft, Serial 24–2966, registration N7752P. These were Application for Registration of Northside Supply and Development Co. to Federal Aviation Agency (F.F.A.) for Piper PA–24–180 Model, Serial No. 24–2966, Registration N7752P, signed by Paul O. Johnson, President, dated March 16, 1964; and a Bill of Sale on a Federal Aviation form to Northside Supply and Development Co., dated March 16, 1964, signed Thunderbird Flying Services, Inc., by its President. The airplane crashed April 4, 1964, before registration was completed. Defendant cites Sec. 1401, Title 49, U.S. Code Annotated, concerning registration of aircraft, subsection (f) of which states: "Registration shall not be evidence of ownership of air-

craft in any proceeding in which such ownership by a particular person is, or may be, in issue." However, that does not prevent the contract of sale and the bill of sale from being evidence of ownership. Defendant says there was no proof of execution or authenticity of these documents citing Cummins v. Dixon, Mo.Sup., 265 S.W.2d 386, 394, 47 A.L.R.2d 441 (sent back for full showing of facts on that issue); Johnson v. American Railway Express Co., Mo.App., 245 S.W. 1071, 1072. Defendant also says the copy of the contract of sale in evidence was not signed by the seller. However, this was explained by Orville Moore, an employee of the seller, who made the sale to defendant's president. He said the original copy was signed by the president of the seller and sent to defendant. The copy in evidence signed by defendant's president was the copy kept by the seller. Mr. Moore also identified the signature of the president of the seller on the bill of sale. We consider his testimony substantial evidence of the execution and authenticity of these documents. Defendant's claim that plaintiff was bound by testimony of himself and his witnesses, who were on the plane when it crashed, is based on isolated statements assuming defendant's president to be the owner of the plane, knowing only of his exercising control over it and inviting them to go in it with him. We hold this was insufficient to overcome conclusively the facts of the sale to defendant as shown by the documentary evidence and the salesman's testimony. We further note in a pretrial order it was stipulated that after the F.A.A. investigation "defendant removed said plane to Dallas, Texas, on or about May 8, 1964, and it remained in defendant's possession until November 16, 1966, when the propeller and spark plugs were shipped by defendant's agent to defendant's attorney." We hold the issue of ownership was a proper jury issue.

A statement of other facts shown by the evidence is necessary to pass on defendant's claim of contributory negligence and plaintiff's claim of error in Instruction No. 3

submitting contributory negligence. Plaintiff worked for defendant's president Paul O. Johnson in motels owned by him but was never employed by defendant. He was a licensed pilot and had been flying for about 20 years. He had flown other planes at the request of Johnson and went to Wichita, Kansas, to get the plane herein involved at Johnson's request. He flew it from there after flying about 30 hours with the seller's representative checking him out on it. He later flew it again to Wichita for minor repairs by the seller and on the way back noticed a sputtering noise which he said cleared up. He explained to Johnson what happened and told him he "presumed it was the plugs that caused the trouble and that he ought to have them checked." Plaintiff said Johnson "said he would do so and for me not to worry about it." Plaintiff had a witness who heard this conversation and corroborated plaintiff's version of it. Two or three days later, they started on the trip during which the plane crashed. Plaintiff received no pay for flying the plane, flying it as a courtesy to Mr. Johnson and his firm. At Jackson, Mississippi, two other men, Joe Kirkland and G. O. Tackett, were invited by Johnson to go with him to Texas and Mexico. Plaintiff said they had no trouble taking off from Jackson but at Alexandria, Louisiana, stopped to check the weather. They took off with the same load they had at Jackson, having filled with gas at Alexandria. Plaintiff said he had a normal full power takeoff estimating the plane was in the air at about 800 feet on the runway, but after he got up "approximately five, six hundred feet" and made a turn the engine made a big exhaust noise, a backfire, and the engine and the propeller stopped immediately. Mr. Kirkland who was on the plane gave substantially the same account as to what happened. Mr. Tackett, the other passenger, was made unconscious and had no recollection as to what happened. Johnson did not testify. Plaintiff had not pulled up the landing gear at that time. Before the crash, plaintiff turned off the ignition to prevent fire when he could not get the engine started. Plaintiff said in a deposi-

tion that his takeoff runs at both Jackson and Alexandria were 2500 feet, which was nearly half the length of these runways. The F.A.A. examination report on the plane showed its spark plugs were heavily leaded. Plaintiff had expert testimony that this could cause backfire into the intake manifold which could cause the engine to stop.

■ Defendant states two grounds for its claim that plaintiff was guilty of contributory negligence as a matter of law. First: that the plane was overloaded and that it was plaintiff's responsibility to determine this and not to attempt to fly an overloaded plane. Second: that plaintiff had prior knowledge of defective spark plugs and that it was his responsibility to know this condition had been corrected before flying the plane, citing Civil Air Regulations: "91.3 (a) The pilot in command of an aircraft is directly responsible for and is the final authority as to the operation of that aircraft." "91.29 (a) No person may operate a civil aircraft unless it is in an airworthy condition. (b) The pilot in command of a civil aircraft is responsible for determining whether that aircraft is in condition for safe flight. He shall discontinue the flight when unairworthy mechanical or structural conditions occur." See also 91.31 (a) hereinafter quoted. Plaintiff's petition originally filed by other lawyers, who did not remain in the case, alleged as a ground of negligence, that under the rules of F.A.A. and the manufacturer the gross weight should have been no more than 2550 pounds but that the takeoff was made at defendant's request with 2703 pounds or 153 pounds more than the authorized load. At the trial, these original allegations were withdrawn but defendant contends they amounted to a judicial admission that the plane was overweight at the takeoff. Plaintiff said he would not have gone up if he knew the plane was overloaded and that he did not think he could get the plane off the ground with such an overload. Defendant relies on Wehrli v. Wabash Railroad Co., Mo.Sup., 315 S.W. 2d 765, but this was not an abandoned plead-

ing case. Our view is that the abandoned allegations are not judicial admissions binding on plaintiff that the plane was overweight when he took off at Alexandria but were admissible in evidence as an admission against interest. An admission in an abandoned pleading is not conclusive. Vanausdol v. Bank of Odessa, 222 Mo.App. 91, 5 S.W.2d 109; Kirk v. Metropolitan Life Ins. Co., 225 Mo.App. 756, 38 S.W.2d 519; Harvedt v. Harpst, Mo.Sup., 173 S.W.2d 65. See also 41 Am.Jur. 436, Pleading, Sec. 202, p. 508, Sec. 314; 29 Am.Jur.2d 748–755, Evidence, Secs. 693–696; Annotation, 52 A. L.R.2d 516, 524, stating, "[T]he original pleading is admissible against the pleader in the proceeding in which it was filed, as evidence of admissions against interest contained therein." We said in Andrus v. Business Men's Accident Ass'n, 283 Mo. 442, 223 S.W. 70, 75, 13 A.L.R. 779: "The abandoned pleading was admissible in evidence, but was not conclusive as to the fact alleged. It could be weighed like any other admission of defendant." Likewise in Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W.2d 21, we further stated: "When put in evidence * * * its contents became admissions of fact to be considered by the jury along with respondent's testimony and the circumstances attending the accident, but nothing more." For other cases see West's Missouri Digest Evidence, ⊜265(8).

Therefore, this abandoned pleading was not conclusive on the issue of the total load of the plane but was substantial evidence to support such a finding by the jury. At the trial, Mr. Kirkland made the following estimates of the weight of the passengers, saying they were guesses: Johnson, 150 or 160 pounds (he said in a deposition around 175); plaintiff, 180 to 185; Tackett, 170 to 175; his own, 200 (he said in a deposition 220). Plaintiff's estimate was Johnson 160 pounds, Tackett 140, and his own 160. Defendant relies on the abandoned allegations of the petition which alleged both an authorized maximum and a total weight in excess thereof by 153 pounds. The empty weight

of the plane was stated to be 1558 pounds. Defendant had oral testimony of the F.A.A. investigator Hindert who investigated the accident as to his weight estimates of the men and he said the gas and oil would add 75 pounds. Over objection, Hindert further testified as follows: "MR. SCHMIDT: Section 91.31, Civil Air Regulations, civil aircraft operating limitations and marking requirements, subparagraph a: 'Each person operating a civil aircraft shall comply with the operating limitations for that aircraft prescribed by the certificating authority of the country of register.' Now, is that 2,550 pounds what this regulation means? A. Yes, sir." Plaintiff says "there was no evidence in this record whatever as to the maximum gross weight prescribed by the certificating authority, except witness Hindert's opinion and statement that it was 2,550 pounds." Plaintiff says: "The rule setting forth the maximum gross weight prescribed by the certificating authority should have been introduced in evidence, and not the interpretation of a former FAA employee." Defendant points out that plaintiff did say: "Q. And the gross takeoff weight of twenty-five hundred and fifty pounds sounds about right, doesn't it? A. It sounds about right." In Keldsen v. Brimmer, 79 Wyo. 152, 331 P.2d 825, 75 A.L.R.2d 859, the evidence was held insufficient to show the claimed overweight (not too definitely established) was the proximate cause of the plane crash. As in that case, plaintiff herein flew a considerable distance without trouble. See also Morrison v. Le Tourneau Co. of Georgia, U.S.C.A. 5th, 138 F.2d 339, 341. In Willhite v. City of St. Louis, 359 Mo. 933, 224 S.W.2d 956, 957, although a statute required overtaking vehicles to pass others to the left, we said "[w]e cannot hold that it is always negligence as a matter of law, under all circumstances, to pass another motor vehicle on the right." See also Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541. In Ziser v. Colonial Western Airways, 10 N.J. Misc. 1118, 162 A. 591, 592, it was held that violation of rules in loading a plane beyond the numerical limit set was properly submitted to the jury. This was a more specific rule than those herein involved. Our view is that there was a jury issue in this case on overloading but that it is not conclusive against plaintiff and therefore he cannot be held guilty of contributory negligence as a matter of law.

■ Likewise we cannot agree with defendant's further claim that plaintiff was guilty of contributory negligence as a matter of law because he had knowledge of defective spark plugs and flew without knowing this had been corrected. (Of course, defendant also contends that spark plugs had nothing to do with the crash.) Defendant argues that it was plaintiff's sole responsibility to determine whether the plane was safe for flight under Civil Air Regulation 91.29. Plaintiff had his own testimony and that of a witness that he told Johnson several days before the trip the spark plugs cut out on his way back from Wichita and should be replaced or repaired and was told by Johnson that he would take care of it. We reaffirm what we said in Hough v. Rapidair, Inc., Mo.Sup., 298 S.W.2d 378: "In this case liability should be determined by the law of Missouri applicable to torts on land. * * * We have the opinion that, in this case, violation of the Rules is not to be considered negligence as a matter of law." The law of Louisiana where this accident occurred is the same. See Southern Air Transport v. Gulf Airways, Inc., 215 La. 366, 40 So.2d 787. Certainly this should be true of the broad general standards relied on such as "airworthiness" and "condition for safe flight." Therefore, we hold the issue of plaintiff's contributory negligence was for the jury.

Instruction No. 3 was as follows: "Your verdict must be for the defendant if you believe: First, plaintiff either: Operated the airplane in question when it was overloaded to the extent of 153 pounds; or

"Failed to retract the landing gear of the airplane after it left the ground, thus decreasing airspeed and reducing the airworthiness of said airplane; or

"Flew the airplane in too steep a climbing attitude under the conditions then and there existing, thus decreasing the airworthiness of said airplane; and

"Second, plaintiff's conduct in any one or more of the respects submitted in paragraph First was negligent; and

"Third, such negligence of plaintiff caused or directly contributed to cause any damage plaintiff may have sustained.

"MAI 28.01 Tendered by Defendant."

■ Plaintiff contends that each of the three alternative submissions of negligence in this instruction is prejudicially erroneous. As to the first plaintiff says it fails to require a finding of actual or constructive knowledge of overloading, citing Southern Air Transport v. Gulf Airways, Inc., 215 La. 366, 40 So.2d 787, 789, saying: "'In the absence of statutes covering the operation and management of airplanes at the time and place of an accident, specifically applicable to the issue of negligence in the operation thereof, the rules of law applicable to torts—the ordinary rules of negligence and due care—obtain. Thus, the rule of the common law that every person shall use ordinary care not to injure another, that is, such care as the great mass of mankind would use under the same or similar circumstances or such care as the ordinarily prudent person would use under the same or similar circumstances, applies * * *.'" See also Maryland Casualty Co. v. W. H. Stewart & Sons, Inc., La. App., 100 So.2d 912, 913. Defendant contends the statement in plaintiff's abandoned allegations as to overload was conclusive against him as a judicial admission. We have hereinabove ruled against this contention. As defendant further contends, it was admissible as an admission against interest but as such it was subject to explanation. In this connection, we note again plaintiff said he would not have flown the plane if he had known it was overweight.

Defendant cites Pappas v. Pieper, Mo. Sup., 325 S.W.2d 789, 75 A.L.R.2d 850, in which the plaintiff's active physical interference with the defendant pilot's operation of the plane was submitted as contributory negligence. It was contended this instruction "failed to require a finding that the plaintiff knew or in the exercise of ordinary care could have known that his action in preventing the defendant from releasing all the flaps of the plane was not reasonably safe." We pointed out two different types of contributory negligence stated in ALI Restatement of Torts 466(a) and 466(b) (Restatement of Torts 2d same) and said of the type of contributory negligence, called casual negligence, discussed in the Pappas case (325 S.W.2d l.c. 793–794): "[T]his case involves the type of contributory negligence described in Sec. 466(b) of the Restatement, namely, 'conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reasonable man should conform in order to protect himself from harm.' * * * The Restatement's definition of negligence (Sec. 282) is conduct 'which falls below the standard established by law for the protection of others against unreasonable risk of harm.' The standard referred to 'is that of a reasonable man under like circumstances.' (Sec. 283.) The question in this case, on contributory negligence, is whether plaintiff's conduct was that of a reasonable man under the circumstances shown." We also pointed out the other type of contributory negligence described in Sec. 466(a) of the Restatement of Torts, namely: "An intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know." In this case, the claimed danger, an overloaded plane, was a physical condition created by defendant. See examples stated in Comment e, 466(a), concerning riding with an incompetent automobile driver. For other circumstances where a finding of actual or constructive knowledge is

required, see Sec. 495, Comment d, concerning control of conduct of a third person.

Plaintiff did not himself overload the plane or determine its load and the evidence that it was overloaded is not conclusive on that issue. Defendant's president Johnson invited the two guests. Plaintiff was flying the plane at Johnson's request as an accommodation. The plane had seats for four and to keep down weight only one bag was taken for all four. Defendant's evidence as to the weight of the gasoline and oil was for the jury as were the somewhat indefinite estimates of the weights of those on the plane. Plaintiff never admitted that he knew the plane was overweight. In fact, neither the claimed maximum gross authorized weight nor the actual takeoff weight was ever admitted or conclusively established. Plaintiff's claimed negligence is based on exposure of himself to danger of flying an overloaded plane, which he did not himself overload. Therefore, our conclusion is that his contributory negligence would depend upon his intentional or unreasonable exposure of himself to danger of which he knew or had reason to know. Because the first alternative of Instruction No. 3 did not require a finding of plaintiff's actual or constructive knowledge that the plane was overloaded, we hold it was prejudicially erroneous.

■ However, we do not agree with plaintiff's contention that there was no evidence of causal connection between flying an overweight plane and its crash. Defendant had evidence that it took about three times as much runway distance as it should have to get the plane in the air; that it then cleared the trees at the end of the runway by only about 50 feet; and that lack of attaining altitude caused it to stall and crash. Furthermore, we hold, contrary to plaintiff's contention, that the issue of proximate cause was properly submitted by paragraph

Third of Instruction No. 3 which is in accord with MAI 28.01 requirements.

■ We consider the second and third alternatives of Instruction No. 3 prejudicially erroneous because each argumentatively assumed the fact required to be found would have a certain result, namely: "reducing the airworthiness of said airplane"; and also in the second "decreasing airspeed" which plaintiff shows were contested issues. Defendant points out Instruction No. 9 which was as follows: "The Court does not mean to assume as true any facts referred to in these instructions but leaves it to you to determine what the facts are." Defendant says this Instruction removed any doubt the jury could have had about assumption of facts, citing Allen v. Purvis, Mo.App., 30 S.W.2d 196, 201; Green v. Kansas City, Mo.App., 107 S.W.2d 104, 105; Bidleman v. Morrison Motor Freight, Mo.App., 273 S.W.2d 745, 749; Pierce v. St. Louis Public Service Co., Mo.App., 380 S.W.2d 943, 949. In Allen, Green and Bidleman the court did not consider that the instruction assumed anything. In Pierce it was said that an indefinite or ambiguous requirement could be cured by a more definite instruction. An instruction such as Instruction 9 could be helpful in making clear indefinite or ambiguous language; but in the case of a clear direct assumption of a controverted fact in a verdict directing instruction, we have said this cannot be cured by other instructions properly submitting the issue. See McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135, 139; Trautloff v. Dannen Mills, Inc., Mo. App., 316 S.W.2d 866, 873; see also Watt v. St. Louis Public Service Co., Mo.Sup., 354 S.W.2d 889, 892. Furthermore, the second and third alternatives of Instruction No. 3 do more than assume facts. They assume that the facts required to be found would have certain definite results. After the oral argument herein, defendant with leave filed a memorandum arguing the use of the word "thus" did not have this effect, citing Daniels v. State,

52 Fla. 18, 41 So. 609, 611, and Schrader v. City of Los Angeles, 19 Cal.App.2d 332, 65 P.2d 374, 375, construing "thus" as used in these cases to mean "in the way just indicated." We do not see that substituting those words for "thus" in the second and third alternatives of Instruction No. 3 would cure the assumption that the fact required to be found would have the result specified. Webster's Third New International Dictionary states the meaning of "thus" as "hence," "consequently" and "because of this or that." We consider that all of these would assume the result indicated.

■ We do not agree with plaintiff's contention based on our ruling in Housman v. Fiddyment, Mo.Sup., 421 S.W.2d 284, an automobile collision case, that it was error to allow Hindert to give his opinion as an expert that the airplane crash was caused by poor pilot technique. The important issues in the Housman case were the point of impact and the positions of the vehicles with relation to each other and to the center of the roadway. The basis of that decision was that now "nearly all jurors are experienced motorists" and "there was no necessity of resorting to the specialized knowledge and experience possessed by an expert" in determining the single issue of which car was on the wrong side of the road. Nevertheless there were two dissents in the Court en Banc. Our view is that the reasons for the ruling in the Housman case do not apply to the operation of airplanes. It .appeared on voir dire examination that none of the jurors had ever piloted aircraft or had anything to do with the maintenance of aircraft. Hindert based his opinion on his examination of the plane and on the testimony of H. W. Rand who saw the airplane take off, said it did not attain the altitude stated by plaintiff and that he heard the engine continue to operate up to the time of the crash. However, it was error to permit Hindert to base his opinion on facts considered by him and statements made to him that were not in evidence at the trial. See Cardinale v. Kemp, 309 Mo. 241, 274 S.W. 437, 448; Schears v. Missouri Pacific Railroad Co., Mo.Sup., 355 S.W.2d 314, 320. Since there may be more definite evidence, if there is a retrial, we do not pass on plaintiff's contention that the third alternative submission of Instruction No. 3 was not supported by substantial evidence.

The judgment is reversed and the cause remanded.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.